IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
May 7, 2004 Session

## JUDI RICHARDSON v. GEORGE KEVIN SPANOS

**Appeal from the Circuit Court for Sumner County**
**No. 20654-C     C.L. Rogers, Judge**

---

**No. M2003-01139-COA-R3-CV  - Filed October 5, 2005**

---

This appeal involves a dispute between the parents of an eleven-year-old boy over child support and private school tuition.  The child's mother filed a petition in the Circuit Court for Sumner County seeking to obtain an increase in child support and to hold the father in contempt for failing to pay medical bills.  The father responded by filing a petition seeking a deduction in child support because of reduced earnings.  Following a bench trial, the trial court reduced the father's child support and denied the mother's request to require the father to pay the child's private school tuition.  The child's mother has appealed.  We have concluded that the trial court properly decreased the father's base child support obligation because of his reduced income.  However, we have also concluded that the trial court erred by failing to require the father to pay a reasonable portion of the child's private school tuition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated and Remanded**

WILLIAM C. KOCH, JR., P.J., M.S., delivered the opinion of the court, in which WILLIAM B. CAIN and FRANK G. CLEMENT, JR., JJ., joined.

D. Scott Parsley and Joshua G. Strickland, Nashville, Tennessee, for the appellant, Judi Richardson.

Joseph Y. Longmire, Jr., Hendersonville, Tennessee, for the appellee, George Kevin Spanos.

**OPINION**

**I.**

Lewis Tyler Spanos was born in Florida on May 2, 1994 to Judi Richardson and George Kevin Spanos.  At the time, Ms. Richardson was an entertainer, and Dr. Spanos was a physician working on cruise ships.  Ms. Richardson and Dr. Spanos never married; however, a Florida court confirmed Dr. Spanos's parentage in April 1996 and ordered Dr. Spanos to begin paying approximately $1,587 in monthly child support, as well as 92% of his son's medical and dental bills.  Dr. Spanos has had little involvement with his son since his birth, and so Ms. Richardson has raised the child essentially on her own.

Dr. Spanos eventually moved to Waverly, Tennessee where he was employed as an emergency room physician. Ms. Richardson and the parties' son moved to Branson, Missouri. It was during the stay in Missouri that the child's developmental challenges and learning disabilities became more evident. Ms. Richardson eventually moved to Franklin, Tennessee and enrolled the parties' son in a transitional kindergarten program at a private school in Nashville. He continued in that program even after Ms. Richardson moved to Sumner County. However, the school eventually requested Ms. Richardson to withdraw her child because he was unable to keep up with his classmates.

During this time, Dr. Spanos was apparently not keeping up with his child support obligations. Accordingly, in October 2000, Ms. Richardson obtained an order from the Circuit Court for Sumner County domesticating the Florida judgment requiring Dr. Spanos to pay child support. The trial court also found Dr. Spanos to be in civil contempt for failing to make his child support payments and to pay the child's medical expenses. The trial court ordered Dr. Spanos to pay the $734.35 child support arrearage and $3,164.73 in medical expenses. The court denied Ms. Richardson's request for increased child support on the ground that the amount of child support required by the Florida order exceeded the amount of support required by the Tennessee Child Support Guidelines. However, the court declined to reduce Dr. Spanos's support obligation because it determined that an upward deviation was called for in light of Dr. Spanos's refusal to have much to do with his son.

After Ms. Richardson moved to Sumner County, she enrolled the parties' son in the Nannie Berry Elementary School ("Nannie Berry"), a public school in Sumner County. The staff at Nannie Berry recognized the child's challenges and developed a special program for him. At some point during the child's first year at Nannie Berry, Ms. Richardson moved to Bellevue in Davidson County. When she informed the Nannie Berry staff that she no longer lived in Sumner County, Ms. Richardson was told that the parties' son could continue at Nannie Berry even though she no longer resided in Sumner County as long as she continued to rent her apartment in Sumner County. Accordingly, Ms. Richardson continued to rent her apartment in Sumner County even though she and the parties' child resided in Davidson County.

In early 2002, the staff at Nannie Berry informed Ms. Richardson that the parties' son could no longer attend school in Sumner County unless she obtained an out-of-zone variance. Accordingly, Ms. Richardson applied for the variance because she wanted her son to remain at Nannie Berry. However, she changed her mind after the staff at Nannie Berry informed her that they had decided that they could no longer meet her son's needs and that they were considering transferring him to Wessington Place Elementary School. Ms. Richardson did not desire to enroll the parties' child at this school because she believed that the parties' son was too advanced for that school.

The parties continued to spar over support issues. In January 2002, Ms. Richardson filed her third contempt petition seeking to require Dr. Spanos to pay for the medical expenses she had incurred having the parties' son evaluated at Vanderbilt University Medical Center. Dr. Spanos responded in April 2002, requesting the court to reduce his obligation to pay the child's medical

expenses from 92% to 50% in light of the new diagnoses and the increased medical expenses associated with them.

In April 2002, Ms. Richardson applied to enroll the parties' son at Currey Ingram Academy ("Currey Ingram"), a private school in Nashville offering individualized programs for children with special needs. Ms. Richardson did not consult Dr. Spanos about enrolling their child in this school, even though its tuition was approximately $17,000 per year. In May 2002, Ms. Richardson filed an amended petition opposing any reduction in Dr. Spanos's obligation to pay their son's medical expenses and requesting that Dr. Spanos be required to pay for sending their son to private school because he "can no longer successfully attend public school and should attend private school if he is to have any hope of improvement."

In July 2002, Ms. Richardson informed the trial court that the parties' son had been accepted at Currey Ingram and that he would not be eligible for scholarship assistance until his second year. Accordingly, she requested the trial court to require Dr. Spanos to pay one-half of the child's tuition. After the child enrolled at Currey Ingram in August 2002, the staff confirmed that he had significant problems with "impulsivity" and "hyperactivity" and that he also had a language disorder.

Dr. Spanos responded to Ms. Richardson's amended petition in March 2003. In addition to denying that he had willfully refused to pay his son's medical expenses, he objected to paying any portion of the Currey Ingram tuition and requested a reduction in his child support obligation because his "ability to earn" had decreased.

All pending matters were heard on April 1, 2003. In its May 1, 2003 order, the trial court lowered Dr. Spanos's child support obligation to $1,078 per month in light of the decrease in his income. However, the trial court also specifically approved an upward variance of $236 per month because of Dr. Spanos's failure to visit with his son.[1] The court declined to require Dr. Spanos to pay for the child's private school expenses and denied each party's petition for attorney's fees. Ms. Richardson has appealed from the trial court's denial of her request for increased child support, and both Ms. Richardson and Dr. Spanos have appealed from the denial of their requests for attorney's fees.

## II.
### DR. SPANOS'S CHILD SUPPORT OBLIGATION

Ms. Richardson has a double-barreled objection to the trial court's decision to reduce Dr. Spanos's child support obligation. First, she argues that Dr. Spanos was not entitled to a decrease in child support based on his decreased income because he is willfully and voluntarily underemployed. Second, she argues that there should have been an upward deviation in Dr. Spanos's child support based on the expenses associated with sending their son to Currey Ingram. We have determined that the record supports the trial court's conclusion that Dr. Spanos is not

---

[1] At the time of trial, Dr. Spanos had not visited with his son for four years. Their last visit consisted of a one-hour visit at a bowling alley in Jackson.

willfully underemployed and that the decrease in his income entitles him to a reduction in his child support. We have also determined that the trial court erred by failing to require Dr. Spanos to be responsible for paying a reasonable portion of his child's educational expenses.

## A.

Parents have "deeply rooted moral responsibilities" to support their minor children. *Boggs v. Boggs*, 520 U.S. 833, 847, 117 S. Ct. 1754, 1764 (1997) (*quoting Rose v. Rose*, 481 U.S. 619, 632, 107 S. Ct. 2029, 2037 (1987)); *State Dep't of Human Servs. ex rel. Young v. Young*, 802 S.W.2d 594, 600 (Tenn. 1990); *Baker v. Baker*, 169 Tenn. 589, 592, 89 S.W.2d 763, 764 (1935). In addition to this moral responsibility, Tennessee law imposes a legal obligation on parents to support their minor children in a manner commensurate with their own means and station in life. Tenn. Code Ann. § 34-1-102(a) (2001); *Wade v. Wade*, 115 S.W.3d 917, 920 (Tenn. Ct. App. 2002). Ever since 1984, the process and criteria for ascertaining a parent's child support obligation has been governed by Child Support Guidelines promulgated by the Tennessee Department of Human Services in accordance with Tenn. Code Ann. § 36-5-101(e) (Supp. 2004).

Prior to the adoption of the Child Support Guidelines, trial courts had wide discretion in matters relating to child custody and support. *Hopkins v. Hopkins*, 152 S.W.3d 447, 452 (Tenn. 2004) (Barker, J., dissenting). Their discretion was guided only by broad equitable principles and rules which took into consideration the condition and means of each parent. *Brooks v. Brooks*, 166 Tenn. 255, 257, 61 S.W.2d 654, 654 (1933). However, the adoption of the Child Support Guidelines has limited the courts' discretion substantially, and decisions regarding child support must be made within the strictures of the Child Support Guidelines. *Berryhill v. Rhodes*, 21 S.W.3d 188, 193 (Tenn. 2000); *Jones v. Jones*, 930 S.W.2d 541, 545 (Tenn. 1996); *Smith v. Smith*, 165 S.W.3d 279, 282 (Tenn. Ct. App. 2004).

Under current law, the amount of support derived from a proper application of the formula in the Child Support Guidelines becomes the presumptive amount of child support owed. This amount of support is rebuttable. Tenn. Code Ann. § 36-5-101(e)(1)(A); Tenn. Comp. R. & Regs. 1240-2-4-.01(1)(d)(1) (Mar. 2005); *Taylor v. Fezell*, 158 S.W.3d 352, 357 (Tenn. 2005). Accordingly, trial courts may, in their discretion, deviate from the amount of support required by the Child Support Guidelines, *State v. Wilson*, 132 S.W.3d 340, 343 (Tenn. 2004); *Jones v. Jones*, 930 S.W.2d at 545, but when they do, they must make specific written findings regarding how the application of the Child Support Guidelines would be unjust or inappropriate in the case. Tenn. Code Ann. § 36-5-101(e)(1)(A); Tenn. Comp. R. & Regs. 1240-2-4-.07(1)(b) (Mar. 2005).

Because child support decisions retain an element of discretion, we review them using the deferential "abuse of discretion" standard. This standard is a review-constraining standard of review that calls for less intense appellate review and, therefore, less likelihood that the trial court's decision will be reversed. *State ex rel. Jones v. Looper*, 86 S.W.3d 189, 193 (Tenn. Ct. App. 2000); *White v. Vanderbilt Univ.*, 21 S.W.3d 215, 222-23 (Tenn. Ct. App. 1999). Appellate courts do not have the latitude to substitute their discretion for that of the trial court. *Henry v. Goins*, 104 S.W.3d 475, 479 (Tenn. 2003); *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000).

Thus, a trial court's discretionary decision will be upheld as long as it is not clearly unreasonable, *Bogan v. Bogan*, 60 S.W.3d 721, 733 (Tenn. 2001), and reasonable minds can disagree about its correctness. *Eldridge v. Eldridge*, 42 S.W.3d 82, 85 (Tenn. 2001); *State v. Scott,* 33 S.W.3d 746, 752 (Tenn. 2000). Discretionary decisions must, however, take the applicable law and the relevant facts into account. *Ballard v. Herzke*, 924 S.W.2d 652, 661 (Tenn. 1996). Accordingly, a trial court will be found to have "abused its discretion" when it applies an incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party. *Perry v. Perry*, 114 S.W.3d 465, 467 (Tenn. 2003); *Clinard v. Blackwood*, 46 S.W.3d 177, 182 (Tenn. 2001); *Overstreet v. Shoney's, Inc.*, 4 S.W.3d 694, 709 (Tenn. Ct. App. 1999).

**B.**
**Dr. Spanos's Base Child Support**

We turn first to Ms. Richardson's assertions that the trial court erred by concluding that Dr. Spanos was not willfully and voluntarily underemployed and that the court should have calculated his child support based on his demonstrated ability to earn $16,000 per month rather than his actual income averaging $7,280 per month. The trial court accredited Dr. Spanos's testimony that he had used his best efforts to obtain his current position as an emergency room physician and, therefore, calculated his child support based on $7,280 per month. We have no basis to second-guess the trial court's decision.

The courts are already familiar with circumstances in which a parent seeks to avoid his or her obligations to pay child support either by quitting work, liquidating a business, or by taking a lower paying job. While parents have the right to pursue their own happiness and to make reasonable employment choices, they will not be permitted to avoid their duty to support their children by decreasing their income. *Willis v. Willis*, 62 S.W.3d 735, 738 (Tenn. Ct. App. 2001). This strategy is self-defeating because a party's child support obligation is not measured by his or her actual income but rather by his or her potential income as evidenced by his or her educational level and previous work experience. Tenn. Comp. R. & Regs. 1240-2-4-.04(3)(d)(3) (Mar. 2005); *Watters v. Watters*, 22 S.W.3d 817, 820-21 (Tenn. Ct. App. 1999).

When called upon to determine whether a parent is willfully and voluntarily unemployed or underemployed, the courts will consider the factors in Tenn. Comp. R. & Regs. 1240-2-4-.04(3)(d)(2), as well as the reasons for the party's change in employment. *Demers v. Demers*, 149 S.W.3d 61, 69 (Tenn. Ct. App. 2003); *Eldridge v. Eldridge*, 137 S.W.3d 1, 21 (Tenn. Ct. App. 2002). If a parent's reasons for working in a lower paying job are reasonable and in good faith, the court will not find him or her to be willfully and voluntarily underemployed. *Willis v. Willis*, 62 S.W.3d at 738. The courts are particularly interested in whether a parent's change in employment is voluntary or involuntary, *Eldridge v. Eldridge*, 137 S.W.3d at 21, and are more inclined to find willful and voluntary underemployment when a decision to accept a lower paying job is voluntary. *Demers v. Demers*, 149 S.W.3d at 69.

Determining whether a parent is willfully and voluntarily underemployed and what a parent's potential income would be are questions of fact that require careful consideration of all the attendant circumstances. *Eldridge v. Eldridge*, 137 S.W.3d at 21; *Willis v. Willis*, 62 S.W.3d at 738-39. Thus, this court reviews a trial court's determination regarding willful and voluntary underemployment using Tenn. R. App. P. 13(d) and accords substantial deference to the trial court's decision, *Willis v. Willis*, 62 S.W.3d at 738, especially when it is premised on the trial court's singular ability to ascertain the credibility of the witnesses. *Lightfoot v. Lightfoot*, No. E2001-00106-COA-R3-CV, 2001 WL 1173297, at *6 (Tenn. Ct. App. Oct. 4, 2001) (No Tenn. R. App. P. 11 application filed).

Until November 2002, Dr. Spanos was employed by West Tennessee Health Care and earned $100 per hour. In 2001 his gross income was $188, 502, and during the first eleven months of 2002, he earned $166,667. However, West Tennessee Health Care declined to renew Dr. Spanos's contract in late 2002, and he was forced to find other work. He pursued three employment possibilities, including a cruise company, and then signed a two-year employment contract with the Jackson-Madison County General Hospital District to work as an emergency room physician in their acute care hospitals in rural West Tennessee. Dr. Spanos testified that he did not seek employment elsewhere because he desired to remain close to his new family.[2]

Dr. Spanos earns $65 per hour under his new contract. He testified without contradiction that the lower hourly rate was due to the large pool of physicians seeking similar work. He also testified without contradiction that he had asked his employer to assign him to more shifts. Dr. Spanos began his new job in January 2003. He earned $5,460 during January 2003, $7,020 during February 2003, and $9,369 during March 2003.

Ms. Richardson had the burden of proving that Dr. Spanos was willfully and voluntarily underemployed. *Demers v. Demers*, 149 S.W.3d at 69. Based on this record, we conclude, as did the trial court, that she failed to carry her burden. In light of Dr. Spanos's explanation regarding his change in employment, we have no basis to conclude that he is willfully and voluntarily underemployed. In light of his undisputed testimony regarding his actual earnings during the first three months of 2003, the trial court's decision to set his base child support at $1,078 is supported by the record. Neither party has taken issue with the trial court's decision to deviate upward because of Dr. Spanos's failure to visit his son. Accordingly, the trial court's decision to require Dr. Spanos to pay $1,314 per month in child support is supported by the record.

## C.
## The Private School Tuition

We turn next to Ms. Richardson's assertion that the trial court erred by failing to require Dr. Spanos to pay their son's tuition to Currey Ingram. She insists that sending their son to Currey Ingram is necessary and in his best interests. We agree and, therefore, find that the trial court erred by failing to require Dr. Spanos to pay a portion of his son's private school tuition.

---

[2]Dr. Spanos married on January 1, 2002. His wife has two children from a prior relationship.

Five years ago, the Tennessee Supreme Court, construing an earlier version of the Child Support Guidelines,[3] held that private school tuition was an "extraordinary educational expense" that could trigger an upward deviation from a base child support award. *Barnett v. Barnett*, 27 S.W.3d 904, 907 (Tenn. 2000). While the court did not address the role that necessity or appropriateness should play in determining whether private school tuition was an extraordinary educational expense, this court had earlier held that the necessity of the expenditure was not a controlling factor and that an upward deviation was warranted regardless of whose decision it was to send the child to private school. *Umstot v. Umstot*, 968 S.W.2d 819, 824-25 (Tenn. Ct. App. 1997).

*Barnett v. Barnett* stands for the proposition that the primary residential parent, having the authority to make educational decisions on behalf of the child, has the authority to enroll a child in private school without the other parent's consent and thereby incur the expenses of private school tuition that both parents may be obligated to pay. *See Barnett v. Barnett*, 27 S.W.3d at 907. However, the court also made it clear that the primary residential parent's income could be considered in calculating how much the upward deviation should be. *Barnett v. Barnett*, 27 S.W.3d at 909. Accordingly, in cases like this one, this court has consistently approved arrangements requiring the non-custodial parent to pay only a portion of the private school expenses even when the non-custodial parent's income far exceeds that of the primary residential parent. *Turnage v. Turnage*, No. W2003-02790-COA-R3-CV, 2004 WL 2607767, at *4 (Tenn. Ct. App. Nov. 15, 2004) (No Tenn. R. App. P. 11 application filed) (affirming an order requiring the non-custodial parent to pay 50% of the private school tuition); *Earthman v. McRae*, No. W2002-00564-COA-R3-CV, 2003 WL 1860527, at *2-3 (Tenn. Ct. App. Apr. 1, 2003) (No Tenn. R. App. P. 11 application filed) (requiring the non-custodial parent to pay 65% of the private school tuition).

These decisions prompted the Department of Human Services to revise the Child Support Guidelines to further elaborate on the procedure and factors to be considered when dealing with extraordinary educational expenses. The Child Support Guidelines now confirm that additional support for these expenses should be calculated separately and should be added to the basic support award. Tenn. Comp. R. & Regs. 1240-2-4-.07(2)(d) (Mar. 2005); *see also Huntley v. Huntley*, 61 S.W.3d 329, 339 (Tenn. Ct. App. 2001); *Dwight v. Dwight*, 936 S.W.2d 945, 950 (Tenn. Ct. App. 1996). They also provide that these expenses should be considered on a case-by-case basis and that the courts should also consider whether the private elementary or secondary schooling is "appropriate to the parents' financial abilities and to the lifestyle of the child if the parents and the child were living together." Tenn. Comp. R. & Regs. 1240-2-4-.07(2)(d)(1)(ii).

The trial court declined to require Dr. Spanos to pay any portion of his son's tuition to Currey Ingram for three reasons. First, the court observed that Ms. Richardson had failed to prove that the education that the parties' son was receiving at Nannie Barry was not meeting his needs. Second, the court was concerned that Ms. Richardson herself could not afford the tuition at Currey Ingram

[3] At the time of the decision, Tenn. Comp. R. & Regs. 1240-2-4-.04(1)(c) (Oct. 1989) provided that "[e]xtraordinary educational expenses and extraordinary medical expenses not covered by insurance shall be added to the percentage calculated in the above rule."

when she enrolled the parties' son there. Finally, the court pointed to the fact that Ms. Richardson had not consulted with Dr. Spanos before she enrolled their child at Currey Ingram. None of these reasons support the trial court's decision not to require Dr. Spanos to pay a portion of the Currey Ingram tuition.

Ms. Richardson is raising the parties' child by herself and thus it falls to her to make educational decisions on behalf of her son. These educational decisions include choosing between public and private school, and while Tennessee law encourages consultation among parents, it does not compel Ms. Richardson to consult Dr. Spanos when she makes these decisions. There is no question that the parties' son has special educational needs, and thus it is not surprising that Ms. Richardson desires to enroll the parties' son in a school best suited to help him maximize his potential. The fact that she has chosen a private school over a public school[4] is of no relevance except insofar as the parties' joint ability to pay the tuition and other expenses to enroll the child in the private school.[5]

If these parties were living together, they would have been able to afford to enroll their child at Currey Ingram because their combined income exceeds $160,000 per year.[6] Thus, sending the child to Currey Ingram is consistent with and appropriate to the parties' financial abilities. Based on the evidence in the record regarding both parties' income at the time of the hearing, we have concluded that Dr. Spanos should be required to pay 55% of the expenses of enrolling the parties' son at Currey Ingram and that Ms. Richardson should pay the remaining 45%. On remand, the trial court shall establish the amount of the required upward deviation in accordance with Tenn. Comp. R. & Regs. 1240-2-4-.07(2)(d)(1)(iii).

### III.
#### THE REQUESTS FOR ATTORNEY'S FEES

As a final matter, both parties take issue with the trial court's denial of their respective requests for attorney's fees. Both parties insist that they are prevailing parties and, therefore, that they are entitled to require their adversary to defray their legal expenses. Under the facts of this case, we do not disagree with the trial court's decision to require the parties to be responsible for their own legal expenses.

---

[4]The adequacy of the special programs available to the child at Nannie Berry are not at issue here. It is clear that the parties' son no longer has the right to attend school in Sumner County because he and his mother now live in Davidson County. In addition, the Sumner County authorities made it clear that the child would no longer be enrolled at Nannie Berry but rather would be placed in another program for special needs children.

[5]The inquiry is not whether the custodial parent can afford the private school tuition on his or her own. The question is whether both parents can together afford the private school tuition.

[6]Ms. Richardson testified that she had returned to work and was capable of earning $75,000 per year. Based on Dr. Spanos's average salary for the first three months of 2003, his projected annual salary for 2003 was $87,360. $87,360 + $75,000 = $162,360.

There is no question that Tenn. Code Ann. § 36-5-103(c) (Supp. 2004) empowers the courts to award reasonable attorney's fees incurred by persons who are required to return to court to enforce a child support order. *See, e.g., Huntley v. Huntley*, 61 S.W.3d at 341. These decisions address themselves to the trial court's discretion, *Aaron v. Aaron*, 909 S.W.2d 408, 411 (Tenn. 1995), and we review them using the less stringent "abuse of discretion" standard of review. Accordingly, we will reverse a trial court's decision with regard to awarding attorney's fees in cases such as this one only when the trial court applies an incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party. *Perry v. Perry*, 114 S.W.3d at 467; *Clinard v. Blackwood*, 46 S.W.3d at 182.

Both parties in this case were partially successful. Ms. Richardson has prevailed with regard to her request that Dr. Spanos be required to pay a portion of their son's tuition at Currey Ingram. However, Dr. Spanos has prevailed on his claim that he was entitled to a decrease in his base child support because of the decrease in his income. Thus, neither party is a clear winner, and more importantly, their child is no better off as a result of this litigation than he would have been had the parties decided to settle these issues by agreement instead of resorting to the courts. Under these circumstances, we decline to find that the trial court abused its discretion by denying both parties' requests for attorney's fees.

## IV.

We affirm the portion of the judgment setting Dr. Spanos's base child support and upward deviation due to his failure to visit at $1,314 per month. We remand the case with directions to calculate the additional upward deviation needed to fulfill Dr. Spanos's obligation to pay 55% of his son's private school expenses beginning in August 2003 and for any other proceedings that may be required. We tax the costs of this appeal in equal proportions to Judi Richardson and her surety and to George Kevin Spanos for which execution, if necessary, may issue.

_____
WILLIAM C. KOCH, JR., P.J., M.S.