# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
JUNE 24, 2009 Session

## STATE OF TENNESSEE *ex rel* SAMELBA P. LEWIS (ROBINSON) v. T. J. ROBINSON, III

### Direct Appeal from the Chancery Court for Montgomery County
Docket No. MC CH CV CS 02 5775330; Case No. 000128201
Laurence M. McMillan, Jr., Chancellor

_____

### No. M2008-02275-COA-R3-CV - Filed July 30, 2009

_____

In this post-divorce proceeding, the father claims that his child support obligation should have been reduced due to his health and financial circumstances. The chancellor confirmed the child support referee's recommendation to deny the father's petition, finding that the father failed to file a timely request for a hearing before the chancellor following the hearing before the referee. We affirm.

### Tenn. R. App. P. 3; Appeal as of Right; Judgment of the Chancery Court Affirmed

ALAN E. HIGHERS, P.J.,W.S., delivered the opinion of the court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

T. J. Robinson, III, West Palm Beach, FL, *pro se*

Robert E. Cooper, Jr., Attorney General and Reporter; Warren A. Jasper, Senior Counsel, Nashville, TN, for Appellee

## OPINION

### I. FACTS & PROCEDURAL HISTORY

In 1995, T.J. Robinson, III ("Father") and Samelba Lewis ("Mother") were divorced by decree of the Chancery Court of Montgomery County, Tennessee. The divorce decree incorporated a marital dissolution agreement that required Father to pay Mother $218.40 per month in child support for the parties' son.

In 2001, the State of Tennessee filed a petition on behalf of Mother seeking to modify Father's child support obligation. The parties reached an agreement, which the court approved, requiring Father to pay $355.00 per month in child support and $45.00 per month toward arrears.

On or around December 9, 2002, Father, acting *pro se*, filed a "Petition for Visitation Credits," seeking a credit against the child support he was required to pay during the summers of 1997, 1999, 2000, and 2002, because the parties' son was apparently visiting with him during that time. On January 27, 2003, Father also sent a letter to the trial court clerk requesting that his child support obligation be reduced or suspended because he was on a temporary unpaid suspension from his job. He attached a letter from his employer, the State of Michigan Department of Corrections, which stated that Father was under investigation on a felony charge and therefore on an unpaid suspension. Father sent an additional letter and a fax to the court stating that he could not afford to travel to Tennessee for a hearing, but requesting that the court reduce his child support obligation nevertheless. Following a hearing, the trial court entered an order on March 4, 2003, denying Father's request to reduce his child support obligation and his request for "visitation credits."

On February 12, 2004, Father re-filed the very same "Petition for Visitation Credits," again seeking credit for the child support he paid during the summers of 1997, 1999, 2000, and 2002. There is nothing in the record to indicate that any action was taken regarding this petition. On September 23, 2004, Father filed a "Petition for Modification of Support Order and Visitation," stating that he could no longer afford to pay the ordered amount of child support due to the fact that he had enrolled as a full-time college student. Apparently, no action was taken on this petition either.

On November 4, 2005, the State of Tennessee filed a petition for modification on behalf of Mother, alleging that Father was $13,530.56 in arrears on his child support obligation and that a significant variance existed between Father's current support obligation and the amount due under the Tennessee Child Support Guidelines. Again, it appears that no action was taken on this petition. A nearly identical petition for modification was filed on June 11, 2007, but this petition stated that it was brought by "Thomas Robinson" rather than Mother. However, the petition was signed by the same person who filed the 2005 petition on behalf of Mother. In any event, this petition stated that Father was $20,130.56 in arrears, and it alleged that a significant variance existed between the current child support obligation and the amount owed under the guidelines.

On November 14, 2007, Father, Mother, and an attorney for the State of Tennessee appeared at a hearing before a child support referee. The record before us does not contain a transcript of this hearing. However, it does contain an "Affidavit of Income" submitted by Father, indicating that he was "self employed in lawn services" during 2003, earning $400.00 per month. Father's affidavit also stated that he was employed as a drummer at a church in Michigan from July 2004 to January 2006, earning $100.00 per week. The referee entered her "Findings and Recommendations" on November 14, 2007, concluding that there was no significant variance between the current child support obligation ($355.00) and that owed under the child support guidelines ($371.00).[1] Therefore, the referee recommended denying the petitions to modify and ordering that Father's child support remain at the current level.

Father subsequently filed a "Motion for Re-hearing (Appeal)," seeking a hearing before the chancellor. Father alleged in this motion that he had evidence from his cardiologist to prove that he was unable to work, and he claimed that his child support arrears should be retroactively adjusted beginning on the date that he was diagnosed with a heart condition in 2003. The record contains a letter from Father's doctor which states, "Because of his arrhythmias and his defibrillator, [Father] was encouraged not to drive a motor vehicle. This has affected his ability to sustain regular employment." A hearing was held before the chancellor on January 11, 2008, but we do not have a transcript of the hearing in the record. According to the order subsequently entered by the chancellor, Father argued at the hearing "that the referee failed to take into consideration the letter from his physician . . . ." The chancellor found that, "in the event the child support referee failed to take this letter into account, it was error." Accordingly, the chancellor remanded the matter to the referee "to take into account [Father]'s physicians's letter . . . in calculating his income for child support purposes . . . ." According to the chancellor's order, Father also argued at the hearing that he should be entitled to a recalculation of his arrears to a date prior to the June 2007 petition for modification, since he had filed, or at least attempted to file, a petition to modify his child support on February 12, 2004, but the petition was never addressed. The chancellor noted that Father produced documentation from the clerk's office proving that he filed "a petition" on February 12, 2004.[2] As such, the chancellor found that, "as a matter of equity [Father]'s child support arrearage should be recalculated to the date of his original petition of February 12, 2004."

Another hearing was held before the referee on June 9, 2008, but again, we have no transcript of the hearing in the record before us. The referee entered her "Findings and Recommendations" on June 9, 2008, which indicate that Father, Mother, and an attorney for the State of Tennessee were present. The referee again recommended denying the petitions for modification, finding no significant variance between the ordered child support obligation and that owed under the guidelines. The referee found that Father was not disabled because he was driving in spite of his physician's

---

[1] The child support worksheets attached to the referee's findings list Father's monthly gross income at $1,386.66. According to Father's brief on appeal, the referee "imputed the standard income for males."

[2] From our review of the record, the document filed by Father on February 12, 2004, was actually the "Petition for Visitation Credits" that he had previously filed and the court had denied.

letter, he was taking classes at the University of Michigan and expected to graduate in 2009 with a Bachelor of Science degree, he currently held a dental assistant license, and he was considering attending dental school.

On June 16, 2008, the chancellor entered an order confirming the referee's findings, noting that no request for a hearing had been made pursuant to Tennessee Code Annotated section 36-5-405(h).[3] Thereafter, on June 23, 2008, Father filed a "Motion for Re-hearing (Appeal)," seeking a hearing before the chancellor. The chancellor denied Father's motion as untimely because it was not filed within five days of the date of the hearing before the referee. Father then filed a motion to reconsider and sent a letter to the chancellor, claiming that he had originally filed a motion "within the time lines," but the clerk's office allegedly sent it back to him. Following a hearing on September 5, 2008, the chancellor entered an order which stated, "after hearing proof in the matter [Father]'s request to reconsider . . . is denied." Father timely filed a notice of appeal.

## II. ISSUES PRESENTED
Father presents the following issues, as we perceive them, for review:

1. Whether the trial court erred in finding that Father's request for a hearing before the chancellor was untimely.
2. Whether the trial court erred in confirming the referee's findings when the court previously ordered the referee to recalculate Father's arrearage to the date of his original petition filed February 12, 2004, and the referee failed to do so.
3. Whether the referee erred in denying the petition to modify despite Father's physician's letter and Father's financial circumstances.

For the following reasons, we affirm the decision of the chancery court.

## III. STANDARD OF REVIEW

We review child support decisions using the deferential "abuse of discretion" standard. ***Richardson v. Spanos***, 189 S.W.3d 720, 725 (Tenn. Ct. App. 2005). "[A] trial court will be found

---

[3] Tennessee Code Annotated section 36-5-405 provides, in pertinent part:

(g) Upon the conclusion of the hearing in each case, the referee shall transmit to the judge all papers relating to the case, along with the referee's findings and recommendations in writing. . . .

(h) Any party may, within five (5) days thereafter, excluding nonjudicial days, file a request for a hearing by the judge of the court having jurisdiction. The judge may, on the judge's own motion, order a rehearing of any matter heard before a referee, and shall allow a hearing if a request for such is filed as herein prescribed. . . .

(i) If a hearing before the judge is not requested, the findings and recommendations of the referee become the final decree of the court when confirmed by an order of the judge.

to have 'abused its discretion' when it applies an incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party." *Id.* (citations omitted). However, we will not simply substitute our discretion for that of the trial court. *Id.*

## IV. DISCUSSION

### A. *The Timeliness of Father's Request for a Hearing before the Chancellor*

As previously noted, Tennessee Code Annotated section 36-5-405 provides, in pertinent part:

> (g) Upon the conclusion of the hearing in each case, the referee shall transmit to the judge all papers relating to the case, along with the referee's findings and recommendations in writing. . . .
> (h) Any party may, within five (5) days thereafter, excluding nonjudicial days, file a request for a hearing by the judge of the court having jurisdiction. The judge may, on the judge's own motion, order a rehearing of any matter heard before a referee, and shall allow a hearing if a request for such is filed as herein prescribed. . . .
> (i) If a hearing before the judge is not requested, the findings and recommendations of the referee become the final decree of the court when confirmed by an order of the judge.

Here, the referee entered her findings and recommendation on June 9, 2008, and the chancellor confirmed those findings on June 16, 2008. Father filed a request for a hearing on June 23, which was denied. Father then claimed that he had previously filed a timely request for a hearing, but the clerk's office returned it to him. On appeal, Father states in his brief that his original request for a hearing "was sent on June 11, 2008 from Ohio via U.S. Mail." The chancellor held a hearing on Father's motion to reconsider, and "after hearing proof in the matter," denied Father's motion. We do not have a transcript of the hearing or any other actual evidence in the record to support Father's assertion that he filed a timely request for a hearing. Therefore, we find no error in the trial court's conclusion that Father's request was untimely.

### B. *Retroactive Modification*

Next, Father argues that the trial court erred in confirming the referee's recommendation to deny his petition to modify when, according to Father, the chancellor had previously "deemed this case to be worthy of modification retroactively." Again, the chancellor found that the referee erred *if* she failed to consider the letter from Father's physician, and he remanded the matter to the referee "to take into account [Father]'s physician's letter . . . in calculating his income for child support purposes, and to recalculate his arrearage retroactive to February 12, 2004." Father obviously interprets the chancellor's order to mean that the chancellor had already found that he was unable to work, already found that his petition to modify should be granted, and ordered the referee to reduce the amount of his arrearage retroactive to 2004. The State, on the other hand, interprets the

-5-

chancellor's order as an instruction to the referee to consider the letter from Father's physician in determining whether the petition to modify should be granted, and *if the referee found that a decrease in child support was warranted*, then requiring the reduction to be retroactive to the date of Father's original petition.[4] We agree with the State's position. Again, we have no transcript of the hearing that gave rise to the chancellor's order. However, we find it significant that the chancellor's order does *not* instruct the referee to grant Father's petition to modify, nor does it include a finding by the chancellor that Father was unable to work due to his physician's letter. The chancellor simply found that, "in the event the child support referee failed to take this letter into account, it was error." The chancellor then remanded the matter to the referee in order for her "to take into account [Father]'s physician's letter . . . in calculating his income for child support purposes . . . ." Next, the chancellor noted that Father claimed he had filed a petition for modification on February 12, 2004, and "he was unable to get his petition filed and timely heard" due to difficulties communicating with the clerk's office and district attorney's office. The court then concluded that, "as a matter of equity, [Father]'s child support arrearage should be recalculated to the date of his original petition of February 12, 2004." If we were to read this sentence in isolation, we might agree with Father's position that the trial court ordered a modification retroactive to February 12, 2004. However, based on our reading of the entire order, we conclude that Father was only entitled to a retroactive modification *if* the referee first found that the petition to modify should be granted.

On remand, the referee considered the letter, in addition to other evidence, yet concluded that Father was able to work. Therefore, she recommended denying his petition to modify, and consequently, Father was not entitled to a retroactive modification of his child support to the date of his original petition. The chancellor confirmed the referee's recommendation, and we find no error in the chancellor's actions.

### C. The Referee's Findings

Finally, Father argues that the referee should have modified his child support obligation due to Father's health condition and financial circumstances. We have already determined that the chancellor did not err in confirming the referee's findings, due to the untimeliness of Father's request for a hearing. In addition, we have no transcript of the hearing before the referee at which the parties presented proof regarding these issues. Father filed a "statement of the evidence" which merely states the following regarding the hearing before the referee:

> In a hearing on June 6, 2008, the referee made a visual assessment of me and my medical condition. She ruled that the defendant was capable to work regardless of the doctor's letter and she increased the amount of child support.

---

[4] A trial court may modify a child support obligation back to the date that a petition or motion for modification is filed and notice is provided to the non-moving party. ***State ex rel. Hickman v. Dodd***, No. W2008-00534-COA-R3-CV, 2008 WL 4963508, at *2 (Tenn. Ct. App. Nov. 21, 2008).

Father does not describe the parties' testimony or the evidence submitted at the hearing in any manner.[5]  In short, Father's statement of the evidence fails to "convey a fair, accurate and complete account of what transpired with respect to those issues that are the bases of appeal."  Tenn. R. App. P. 24(c).  "This Court's authority to review a trial court's decision is limited to those issues for which an adequate legal record has been preserved."  *Taylor v. Allstate Ins. Co.*, 158 S.W.3d 929, 931 (Tenn. Ct. App. 2004).  "This court cannot review the facts de novo without an appellate record containing the facts, and therefore, we must assume that the record, had it been preserved, would have contained sufficient evidence to support the trial court's factual findings."  *Sherrod v. Wix*, 849 S.W.2d 780, 783 (Tenn. Ct. App. 1992).

## V.  CONCLUSION

For the aforementioned reasons, we affirm the decision of the chancery court.  Costs of this appeal are taxed to the appellant, T.J. Robinson, III, for which execution may issue if necessary.

_____
ALAN E. HIGHERS, P.J., W.S.

---

[5]  The State claims that the referee heard testimony from the parties and considered the letter from Father's physician, a letter from Father's church regarding his employment as a drummer, and a letter from the Social Security Administration finding him ineligible for benefits due to his "ability to perform other types of sit down work."