# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
June 8, 2010 Session

## DANIELLE CHRISTINE REINAGEL v. ALAN N. REINAGEL

**Appeal from the Chancery Court for Dickson County**
**No. 9801-05      Hon. Robert E. Burch, Judge**

---

**No. M2009-02416-COA-R3-CV - Filed July 21, 2010**

---

After the parties were divorced for two years, the father sought to reduce his child support obligation and change the custody of the child which had been agreed upon at the time of the divorce. The Trial Court heard evidence and modified the visitation schedule, but vested the mother with primary custody all based on Tenn. Code Ann. §36-6-101(a)(2)(C). He also increased the child support obligation of the father, and the father has appealed. We affirm the Judgment of the Trial Court.

**Tenn.  R. App. P.3 Appeal as of Right; Judgment of the Chancery Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which  D. MICHAEL SWINEY, J., and JOHN W. MCCLARTY, J., joined.

Robert Todd Jackson and Russ Heldman, Brentwood, Tennessee, for the appellant, Alan N. Reinagel.

Henry F. Todd, Jr., Dickson, Tennessee, for the appellee, Danielle Christine Reinagel.

## OPINION

The plaintiff and defendant in this case were divorced on November 22, 2005, in the Chancery Court for Dickson County. The Divorce Decree incorporated an MDA and Parenting Plan. The Parenting Plan provides that the parties' child, Alexandra Desiree

Reinagel, ("Lexi") d.o.b. 7/7/01, would reside with the mother, and the father would receive liberal and reasonable visitation, as the parties agreed, but at least every weekend. The father agreed to pay $250.00 per month child support.

In early 2008, the father filed a Complaint for Modification, asserting that he should receive a reduction in child support, and also filed a Petition to Modify Final Decree/Parenting Plan, asking that he be named primary residential parent of the child.

An evidentiary hearing was held before the Trial Court, wherein the parties testified, as well as other witnesses. At the conclusion of the evidentiary hearing, the Trial Court ruled and stated that the parenting plan should be modified "but not in a major way", that the wife would remain primary residential parent, and the husband would have visitation every other weekend, with the parties splitting school holidays. The Court also found the husband's child support should be recalculated based on his income being $34,337.00 per year and the wife's income being zero.

In the Court's Order, it was stated that the mother would remain primary residential parent, and that a material change of circumstances had occurred such that a new parenting plan had to be entered. The new parenting plan gave the mother 285 days per year and the father 80 days (every other weekend visitation), and adjusted the father's child support obligation to $577.00 per month. The father has appealed and raised these issues:

1. Whether the Trial Court erred in failing to name the father primary residential parent?

2. Whether the Trial Court erred in modifying the parenting plan to decrease the father's time with Lexi when there were no circumstances shown to justify such a decrease?

3. Whether the Trial Court erred in its calculation of child support by finding the mother's income to be zero?

The father argues that he proved a significant and material change of circumstance such that a change of custody was appropriate.

Appellate courts are reluctant to "second-guess" custody decisions when so much depends on the trial court's assessment of the witnesses' credibility, but will reverse/modify a decision if the Court concludes that the decisions rests on an error of law, or if the evidence preponderates against the finding that there has/has not been a material change of circumstances or that the child's interest will be best served by changing an existing custody

arrangement. *Scofield v. Scofield*, 2007 WL 624351 (Tenn. Ct. App. Feb. 28, 2007).

Tenn. Code Ann. §36-6-101(a)(2)(B) provides:

> If the issue before the court is a modification of the court's prior decree pertaining to custody, the petitioner must prove by a preponderance of the evidence a material change of circumstance. A material change of circumstance does not require a showing of a substantial risk of harm to the child. A material change of circumstance may include, but is not limited to, failures to adhere to the parenting plan or an order of custody and visitation or circumstances that make the parenting plan no longer in the best interest of the child.

Custody decisions "are not intended and should not be designed to reward parents for prior virtuous conduct, nor to punish them for their human frailties or past missteps." *See Scofield*.

A party who seeks a change in custody has the burden of proving that there has been a material change of circumstances. *Id*. "If the person seeking the change of custody cannot demonstrate that the child's circumstances have changed in some material way, the trial court should not reexamine the comparative fitness of the parents, or engage in a 'best interests of the child' analysis. *Id.*

In this case, the father was seeking a change of custody from a split-time arrangement with the mother designated as PRP, to him being designated PRP and having sole custody with standard visitation to the mother. The Trial Court found that a material change of circumstances was shown, but not one that required that the parenting plan be changed in a "major way". The Trial Court found that the mother should remain PRP, and that she should have the child for a majority of the time. Thus, the Trial Court found that the father did not prove a material change of circumstances significant enough to change custody, but sufficient to modify the residential parenting plan. As we have previously recognized, this statute has a different set of criteria and a lower threshold for modification of a residential parenting schedule. *See Scofield*; Tenn. Code Ann. §36-6-101(a)(2)(B) and (C). We have held that Tenn. Code Ann. §36-6-101(a)(2)(C) sets a "very low threshold" for modifying a parenting schedule, but the factors relative to a change of custody, which this Court has equated to "the designation of 'primary residential parent' and matters more substantive than a change of schedule", have not changed.[1] *Id.*

The evidence preponderates against a finding that there has been a material change of circumstances affecting the child's well-being in such a significant way that would justify

---

[1] Tenn. Code Ann. §36-6-101(a)(2)(C) will be discussed in greater detail in the following section.

the "drastic remedy" of changing custody. *See Cosner v. Cosner*, 2008 WL 3892024 (Tenn. Ct. App. Aug. 22, 2008). The father alleged that the mother moved a lot, was not working and was receiving government assistance, and that she had cohabited with her boyfriend, who was now her husband. The mother explained the reasons for her moves (which were not as frequent as the father claimed) and for her lack of employment (which was mainly due to her previous health problems and the health problems of her infant son). Receiving some government assistance due to financial strain does not render one an unfit parent. *See In re DDV*, 2002 WL 225891 (Tenn. Ct. App. Feb. 14, 2002). Moreover, cohabitation with one's boyfriend does not, in and of itself, provide grounds for changing custody when there is no showing that it adversely affected the child or that the child was neglected because of it. *See Cosner.*

The mother testified that she was unable to work because her son had a medical condition that required constant monitoring, and the only way that she could work even temporarily was with the aid of a hired private babysitter. The father alleged that the mother moved frequently and that this was detrimental to Lexi, but the allegation was not established by the evidence. The mother's few moves were easily explained, and ultimately served to benefit Lexi. The father further alleged that the mother did not provide a clean environment for Lexi or did not give her appropriate clothing/hygiene, but these allegations were not established by a preponderance of the evidence. The evidence established that the mother was a concerned parent, had taken steps to insure that Lexi was in a good school and was receiving the education she needed, and there was no showing that she did anything that would have affected Lexi in a negative way. The father's new wife admitted that Lexi was a happy and well-adjusted child, and she was making good grades in school. The Trial Court concluded that the father failed to prove a material change of circumstances affecting the child's well-being in such a significant way that would justify the "drastic remedy" of changing custody. The evidence does not preponderate against these findings. Tenn. R. App. P. 13(d).

The father further argues that if this Court affirms the Trial Court's designation of the mother as primary residential parent, the Court should reverse the Trial Court's modification of the parenting schedule. As stated, the statute sets a lower threshold for finding a material change of circumstances sufficient to modify the parenting schedule. Tenn. Code Ann. §36-6-101(a)(2)(C) states:

> If the issue before the court is a modification of the court's prior decree pertaining to a residential parenting schedule, then the petitioner must prove by a preponderance of the evidence a material change of circumstance affecting the child's best interest. A material change of circumstance does not require a showing of a substantial risk of harm to the child. A material change of circumstance for purposes of modification

of a residential parenting schedule may include, but is not limited to, significant changes in the needs of the child over time, which may include changes relating to age; significant changes in the parent's living or working condition that significantly affect parenting; failure to adhere to the parenting plan; or other circumstances making a change in the residential parenting time in the best interest of the child.

Both parties admitted that they had not always followed the parenting plan, and had tried doing other split-time schedules to make things more workable, but to no avail. The mother testified that she noticed changes in the child's behavior and attitude when they altered the schedule, and that she thus decided it would be better to go back to the parenting plan although it didn't work perfectly, and meant that she did not have weekends with her child and could not take her to church or teach her about her faith. The father admitted that the parenting plan had not worked as they could not always agree about the schedule and that this created conflict. The child was only four years old when the parties divorced, but had since started school. The father admitted that his work schedule was subject to fluctuation that he could not always control, and the mother had become a stay-at-home mom. The mother was shown to be the parent that mainly dealt with the child's education, as the father admitted that until recently he had not been to the child's school, had not attended nor requested parent/teacher conferences, and had not been very involved in the child's education. Taking all of the evidence into consideration, the Trial Court properly found that a material change of circumstance affecting the child's best interests had occurred, sufficient to modify the residential parenting schedule.

When fashioning a residential parenting schedule, the trial court is instructed to consider the following factors:

(1) The parent's ability to instruct, inspire, and encourage the child to prepare for a life of service, and to compete successfully in the society that the child faces as an adult;

(2) The relative strength, nature, and stability of the child's relationship with each parent, including whether a parent has taken greater responsibility for performing parenting responsibilities relating to the daily needs of the child;

(3) The willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interests of the child;

(4) Willful refusal to attend a court-ordered parent education seminar may be considered by the court as evidence of that parent's lack of good faith in these proceedings;

(5) The disposition of each parent to provide the child with food, clothing, medical care, education and other necessary care;

(6) The degree to which a parent has been the primary caregiver, defined as the parent who has taken the greater responsibility for performing parental responsibilities;

(7) The love, affection, and emotional ties existing between each parent and the child;

(8) The emotional needs and developmental level of the child;

(9) The character and physical and emotional fitness of each parent as it relates to each parent's ability to parent or the welfare of the child;

(10) The child's interaction and interrelationships with siblings and with significant adults, as well as the child's involvement with the child's physical surroundings, school, or other significant activities;

(11) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;

(12) Evidence of physical or emotional abuse to the child, to the other parent or to any other person;

(13) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child;

(14) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preference of older children should normally be given greater weight than those of younger children;

(15) Each parent's employment schedule, and the court may make accommodations consistent with those schedules; and

(16) Any other factors deemed relevant by the court.

Tenn. Code Ann. §36-6-404.

As we have often explained trial courts have broad discretion in making these

decisions, and must consider the unique circumstances of each case. *Burton v. Burton*, 2009 WL 302301 (Tenn. Ct. App. Feb. 9, 2009). We are reluctant to second-guess the trial court's determination regarding parenting schedules, and will not "tweak a parenting plan in hopes of achieving what we deem a more reasonable result." *Burris v. Burris*, 2010 WL 1404385 (Tenn. Ct. App. Apr. 7, 2010). A trial court's decision will not be overturned unless the court abused its discretion. *Id.*

Moreover, the trial court is required to consider the above factors in reaching its decision, but is not required to list the relevant factors in its opinion, nor its conclusion as to how a factor affected the overall determination. *Id.* If the trial court does not make specific findings, this Court will review the evidence to determine where the preponderance lies. *Coley v. Coley*, 2008 WL 5206297 (Tenn. Ct. App. Dec. 12, 2008).

In this case, the Trial Court did not make specific findings regarding the statutory factors. Considering the relevant factors in turn, it would appear that both parents were suited to prepare the child for adult life, and both had a close relationship with the child. The mother appeared more willing to attend to the child's educational needs. Both parents seemed willing to encourage the child's relationship with the other parent, and to provide the child with what she needed. The factors regarding continuity of placement, relationships with siblings, and the parents' work schedules, however, would militate in favor of the child spending more time with the mother. Given the fact that the child was in school and the mother's concerns about her consistency in schedule, bedtime, etc., was the basis on which the Trial Court placed the child with the mother a greater amount of the time and moving away from a split-time schedule that had proven problematic. We find no abuse of discretion in the Trial Court's determination regarding the parenting schedule.

Finally, the father argues that the Trial Court erred in its calculation of child support, by finding the mother's income was zero. He wanted the Court to find that the mother was voluntarily unemployed and to impute income to her. The Trial Court's decision regarding child support is also reviewed under an abuse of discretion standard. *Richardson v. Spanos*, 189 S.W.3d 720 (Tenn. Ct. App. 2005).

The mother testified that she was not working and could not work due to her son's medical condition, which she stated required constant monitoring, including the daily monitoring of his fluid intake, his number of wet diapers, etc. The mother testified that her most recent employment was a part-time job preparing taxes, and that she had used a private babysitter while she worked, but that person had since moved away.

The father has the burden of proving the mother is voluntarily unemployed such that income should be imputed to her for child support purposes. Tenn. Comp. R. & Regs. 1240-

02-04-.04.

The regulations explaining what constitutes voluntary unemployment state that any intentional choice or act of a parent that adversely affects that parent's income can be a basis for such a finding. *Id.* The regulations go on to explain that the court can consider the parent's role as caretaker of a handicapped or seriously ill child which reduces or eliminates the parent's ability to work outside the home. *Id.* They further explain that stay-at-home parents are an "important and valuable factor in a child's life", and that in considering whether a stay-at-home parent should be imputed income, the court should look at whether the parent stayed at home when the parties were married, the length of time the parent has remained out of the workforce for this purpose, and the age of the children. *Id.*

In this case, the mother testified that her ability to work was significantly limited by her infant son's health condition, and that she had decided to be a stay-at-home mom. There was no evidence regarding whether the mother was a stay-at-home mom while the parties were married, but she had been out of work basically since she became pregnant with her son due to health problems, and her son was 17 months old at the time of trial and Lexi was 7. Based on these facts, the Trial Court did not err in finding that the mother was not voluntarily unemployed and we affirm his refusal to impute income to her.

We affirm the Judgment of the Trial Court and remand, with the cost of the appeal assessed to Alan N. Reinagel.

_____
HERSCHEL PICKENS FRANKS, P.J.