IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
June 21, 2011 Session

**IN RE HANNAH M. N.**

**Appeal from the Juvenile Court for Blount County**
**No. P2304      William T. Denton, Judge**

_____

**No. E2010-00342-COA-R3-JV-FILED-DECEMBER 2, 2011**

_____

This is an appeal from a child support action. A juvenile court magistrate found the father to be willfully and voluntarily unemployed and imputed income to him for the purposes of calculating his child support obligation. The magistrate refused to consider a motion to modify or vacate. On appeal to the juvenile court judge, the father was refused review on the basis that the magistrate had heard the motion to modify or vacate pursuant to Rule 34(b) of the Tennessee Rules of Juvenile Procedure. The father appealed. We vacate the judgment of the juvenile court and remand for further proceedings.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court**
**Vacated; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

Eugene B. Dixon, Maryville, Tennessee, for the appellant, David. N.

Robert E. Cooper, Jr., Attorney General & Reporter, Joseph F. Whalen, Associate Solicitor General, and Warren A. Jasper, Senior Counsel, Nashville, Tennessee, for the appellee, State of Tennessee ex rel. Carissa D.

**OPINION**

**I. BACKGROUND**

In October 2008, a petition to set child support was filed by the State of Tennessee on behalf of Carissa D. ("Mother"), the mother of Hannah M. N. ("the Child") (D.O.B. 10/29/2000). Four month's later, the Child's father, David N. ("Father"), appeared pro se

at a hearing before the magistrate for the juvenile court ("the Magistrate"). According to the Statement of the Evidence submitted by the State:

> . . . During the hearing, [Father] testified that he was unemployed and had custody of another natural child. That he had some college credits; attended the University of Maryland, but had no degree. He also testified that his mother had passed away in 2007, and left a large sum of money to his sister. His sister had been sending him money. At the time of the hearing, she had sent him $15,000.00. He further testified that his girlfriend had been sending him money and that she had sent him $1500.00. He testified to a total of $3000.00 being given to him since the summer of 2008. [Father] also testified that he did not have a tax return and had not filed one in 2007. [Father] later testified that he had found his W-2 for 2007, and would be filing his 2007 taxes. He testified at that point in time that he had been earning $7.00 per hour for 40 hours per week.
>
> On cross-examination, [Father] testified he had earned $300 per week working for a tree service in November 2008. He also testified that he was unemployed but owned a private club, where people came to play cards. All the club members were people he knew.
>
> [Father] further testified that he had owned a restaurant in Maryland and that he had sold it in 2005. He testified that he was paid $17,000 in cash and was owed another $8,000.00 to $10,000.00 from the sale of the restaurant.
>
> [Father] also testified that while living in Maryland he worked as a manager at a casino earning $30.00 per hour, and that the laws in Maryland changed and the casino was shut down.
>
> [Father] brought no proof of income with him to the Court hearing as instructed to do on the summons [Father] was served with on October 24, 2008.
>
> The Court imputed income to [Mother] of $6.55 an hour, 40 hours per week . . . based on her prior employment history and $50,000 per year based on [Father's] prior employment and educational history. . . .

Specifically regarding his income from approximately 18 years ago, Father testified that he had earned about $30 per hour and worked an average of 24 hours per week in a charity

casino in Prince George's County, Maryland. He related that a change in Maryland law forced the closure of the casino and that he had been unable to find employment in the casino business. Father testified that he had resided in Knox County, Tennessee, since approximately 1997.

According to Father, neither the State nor Mother offered proof that Father was earning more than $20,000 per year. However, the Magistrate found that Father's support obligation should be based on an imputed income of $50,000 per year and set his support obligation at $627 per month. The order memorializing the support hearing was entered on March 2, 2009, and reflects that Father was advised of his right to appeal the decision of the Magistrate to the presiding judge of the juvenile court ("the Judge"). According to Father, the following day, he filed a notice of appeal from the judgment of the Magistrate. Around this period of time, a petition for contempt was filed alleging that Father was in arrears in support payments in the sum of $6,647 as of April 13, 2009.[1] Approximately five months later, Father, now represented by counsel, filed a motion pursuant to Rule 34(b) of the Tennessee Rules of Juvenile Procedure to modify or vacate the order compelling him to pay child support based on an imputed income of $50,000 per year.

On August 26, 2009, the Magistrate conducted a hearing regarding the pending motions. She declined to hear Father's petition to modify, citing Father's "lack of credibility" at the initial hearing. The Magistrate related as follows:

THE COURT: I find you not to be credible on the issue of your club[], how much for the club and how much it makes and what its purpose is. And by my calculations -- and I carefully asked you if there could be more people during the week and that kind of thing -- even if your club was open every day instead of just six days a week, you'd be losing money by your testimony. Don't know what the dues are about. I'm sure I know what the club is about. And I don't know if you're a participant in the gambling also or what the situation is there, but I know that I considered this evidence the last time we were here and I've considered it again . . . .

In response to the Magistrate, Father's counsel commented:

MR. DIXON: . . . [T]he root problem is the imputation we can't address. I suggest to the Court that that may be the reason, why he was ordered to pay $650 -- and I don't know what happened here in Your Honor's court on that

_____

[1]The original petition for contempt was not affixed with a date or time stamp.

day, but –

The Magistrate refused to return to the income issue. The petition for contempt was heard at which time Father testified that he was presently working at the private club in Knoxville earning approximately $320 per week. Father presented his 2008 federal income tax return showing an adjusted gross income of $8,327. Upon being found in willful contempt of court,[2] he was sentenced to confinement until such time as he purged himself of contempt by paying the sum of $2,772.[3]

On September 4, 2009, Father filed a notice of appeal from the Magistrate's judgment. A hearing was held before the Judge on January 13, 2010. The Judge found that Father had waived his right to a de novo hearing by previously filing the motion to modify or vacate, despite the fact that he was informed the Rule 34(b) motion had not been heard by the Magistrate, but was summarily dismissed based on Father's "lack of credibility." Father requested leave of the court to submit an offer of proof on the record regarding Father's income history and income verification, but the request was denied and Father's appeal was dismissed.

An amended notice of appeal was filed by Father on February 2, 2010.

## II. ISSUES

The issues presented by Father are as follows:

1. Whether the trial court erred in ordering Father to pay child support based on Father's imputed income of $50,000 per year.

2. Whether the trial court erred in declining Father's request to appeal from the initial order of the Juvenile Court ordering Father to pay child support based on Father's imputed income of $50,000 per year.

---

[2]The issue of the contempt finding is not before us.

[3]According to the Statement of the Evidence, "the Respondent had the full amount of the purge payment in his pocket in cash at the Court hearing."

## III. STANDARD OF REVIEW

Our review of the findings of fact below is de novo with a presumption of correctness, unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d). As to matters of law, our review is de novo with no presumption of correctness. *See Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997).

Awards of child support are governed by the child support guidelines promulgated by the Tennessee Department of Human Services Child Support Service Division. *See generally* Tenn. Comp. R. & Regs. 1240-2-4; Tenn. Code Ann. § 36-5-101(e)(2). Broad discretion is afforded the trial court in its child support determinations. That discretion should not be disturbed on appeal unless we find in our de novo review that the evidence preponderates against that finding. *See Butler v. Butler*, 680 S.W.2d 467 (Tenn. Ct. App. 1984). We review the trial court's child support decisions using the deferential abuse of discretion standard. *Richardson v. Spanos*, 189 S.W.3d 720, 725 (Tenn. Ct. App. 2005).

## IV  DISCUSSION

Whether a party is willfully and voluntarily underemployed or unemployed is a fact question. *See Brooks v. Brooks*, 992 S.W.2d 403, 409 (Tenn. 1999). In making its determination, the trial court must consider the party's education, training, ability to work, past and present employment, and whether the present job choice was reasonable and made in good faith. Tenn. Comp. R. & Regs. 1240-2-4-.04(3)(a)2.(iii); *Willis v. Willis*, 62 S.W.3d 735, 738 (Tenn. Ct. App. 2001). Although a person has a right to seek fulfilling employment, an obligor parent will not be allowed to lessen his or her child support obligation by choosing to work at a lower paying job when he or she has the ability to earn a greater salary. *Willis*, 62 S.W.3d at 738.

At the initial support hearing before the Magistrate on October 21, 2008, Father was not represented by counsel at the hearing. The State argued that Father had not submitted reliable evidence of his income and that he was willfully and voluntarily unemployed. The Magistrate found Father to be voluntarily unemployed at that time and imputed his income to be $50,000 per year on the basis of his past employment in the casino business many years ago.

Under a previous version of Tenn. Comp. R. & Regs. 1240-2-4-.04, failure by Father to produce reliable evidence of his income would have provided grounds for imputing income. *See Brewer v. Brewer*, No. M2005-02844-COA-R3-CV, 2007 WL 3005346, at*8 (Tenn. Ct. App. Oct. 15, 2007). However, currently, under Tennessee law, there is no

presumption that a parent is willfully or voluntarily underemployed or unemployed. The party alleging that a parent is willfully or voluntarily underemployed or unemployed carries the burden of proof. Tenn. Comp. R. & Regs. 1240-2-4-.04(3)(a)(2)(ii); *Richardson v. Spanos*, 189 S.W.3d 720, 727 (Tenn. Ct. App. 2005). Consequently, the State, acting on Mother's behalf, had the burden of demonstrating that Father was willfully or voluntarily underemployed.

We must therefore agree with Father that the record in this cause does not support the finding of the juvenile court that the State established Father's support obligation should be based upon an imputed monthly income of $4,166.67. Accordingly, this cause must be remanded to the juvenile court.

## V. CONCLUSION

The judgment is vacated and this case is remanded to the juvenile court for further proceedings. Costs of the appeal are taxed to the State of Tennessee ex rel. Carissa D.

_____
JOHN W. McCLARTY, JUDGE