IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
September 16, 2009 Session

## MICHAEL D. REED, v. DARLA CARDEN STEADHAM

**Direct Appeal from the Circuit Court for Hamilton County**
**No. 95DR2338      Hon. W. Jeffery Hollingsworth, Judge**

_____

**No. E2009-00018-COA-R3-CV - FILED OCTOBER 14, 2009**
_____

The father left his salaried employment and began his own construction business, which resulted in a substantial decrease in his annual income. As a result the father reduced his child support payments to the mother, who then asked the Trial Court to find the father was voluntarily under employed and the Court should impute additional income, based upon his true earning capacity. After an evidentiary hearing, the Trial Court found the father was not willfully unemployed and adjusted the child support amount in accordance with the guidelines based on his then income. The mother has appealed. On appeal, we affirm the Judgment of the Trial Court and remand.

**Tenn. R. App. P.3 Appeal as of Right; Judgment of the Circuit Court Affirmed.**

HERSCHEL PICKENS FRANKS, P.J., delivered the opinion of the Court, in which CHARLES D. SUSANO, JR., J., and JOHN W. MCCLARTY, J., joined.

John R. Meldorf, III., Hixson, Tennessee, for appellant, Darla Carden Steadham.

Andrew L. Berke, and Megan England Demastus, Chattanooga, Tennessee, for appellee, Michael D. Reed.

### OPINION

Plaintiff, Michael Reed (hereinafter "father"), and defendant, Darla Reed (hereinafter "mother"), were divorced on March 26, 1996, and had one child. The Court found that it was in the child's best interest to be in the joint custody of the parties with the mother being primary residential custodian, and set a visitation schedule for the father and ordered the father to pay child support of

21% of his net income. The mother petitioned the Court for permission to remove the child from the Court's jurisdiction, which was granted and the father's visitation schedule was modified.

Subsequently, the father filed a Petition to Modify Child support. Documents related to father's employment were introduced. The father testified that he was employed with Athens Distributing through the end of 2006, and that before that year he earned about $70,578.00 per year gross income. He testified that when he left Athens, he rolled his pension there into a profit sharing plan for Kreed Construction. He testified that he and his current wife were the only trustees of the Kreed Construction profit sharing plan, and that the money he rolled into the profit sharing plan was used to purchase Kreed stock, such that they capitalized the company with the money from his pension.

The father testified that he and his current wife were the owners/officers of Kreed Construction, and that he worked at least 50 hours per week for Kreed. He testified that since he capitalized the company in 2007, he had sold three custom homes, and had two more under contract to sell, and that he had also personally borrowed money to put into the business, which he had to pay back.

The mother testified that the child was almost 10, and that the child support decreased in January 2007, and that the father told her it was decreased because he was making less money. The mother testified the father had been paying $530.00 per month since January 2007.

The mother testified that she was employed outside the home when she and the father divorced, and had worked until 1999 when she had her third child. She testified she now has four children, and is basically a stay-at-home mother.

The Trial Court found that the money the father rolled over from his pension was not income, and that he used it to capitalize his business, and that the father did not voluntarily reduce his income, but rather had started his own business with the hope that his income would grow. The Court found the father's income to be $36,000.00 per year, and that the mother did not just quit her job, but that her position was eliminated, and that she currently has no income.

The Court entered an Order finding neither party was willfully unemployed, and that the father should pay the mother guideline child support of $592.00 per month based on their income levels, and then entered a new Permanent Parenting Plan.

The mother filed a Notice of Appeal.

The issue on appeal is "whether the Trial Court erred in its calculation of child support?"

The mother argues that the Trial Court erred when it failed to find the father was voluntarily underemployed, and the Court should have imputed additional income to the father based

upon his true earning capacity. As the evidence shows, the father had worked for 27 years with Athens Distributing, and earned approximately $70,000.00 per year gross. The father testified that his income with Athens was no longer growing at the time he left, but his problems/stress were present, and he sought to start his own business and improve his income and standard of living for himself and his family. He denied that it was an attempt to reduce his income, and that he intended to eventually make more money.

The mother countered that he willfully left a well-paying job to start his own construction business in tumultuous economic times, but admits that the Trial Court's determination of a proper child support award is reviewed under an abuse of discretion standard. *State ex rel. Vaughn v. Kaatrude*, 21 S.W.3d 244 (Tenn. Ct. App. 2000). The mother has the burden of proving that father is voluntarily underemployed. *Demers v. Demers*, 149 S.W.3d 61 (Tenn. Ct. App. 2003).

As this Court has previously explained:

A party's child support obligation is not measured by his actual income; it is measured by his earning capacity as evidenced by his educational level and previous work experience. When called upon to determine whether a parent is willfully and voluntarily unemployed or underemployed, the courts will consider the factors in Tenn. Comp. R. & Regs.1240-2-4-.04(3)(a)(2)(ii), as well as the person's past and present employment and reasons for the party's change in employment.

Determining whether a parent is willfully and voluntarily underemployed and what a parent's potential income would be are questions of fact that require careful consideration of all the attendant circumstances. Thus, this court reviews a trial court's determination regarding willful and voluntary underemployment using Tenn. R. App. P. 13(d) and accords substantial deference to the trial court's decision, especially when it is premised on the trial court's singular ability to ascertain the credibility of the witnesses.

*Owensby v. Davis*, 2008 WL3069777 (Tenn. Ct. App. July 31, 2008)(citations omitted).

This Court has further stated:

The trial court may impute additional gross income upon a parent where it has determined that parent to be willfully or voluntarily underemployed or unemployed. Tenn. Comp. R. & Regs. 1240-2-4-.04(3)(a)(2). Whether a parent is willfully or voluntarily underemployed is a question of fact and the trial court has considerable discretion in its determination. *Eldridge v. Eldridge*, 137 S.W.3d 1, 21 (Tenn. Ct. App.2002). The Child Support Guidelines do not presume that any parent is willfully or voluntary underemployed. Tenn. Comp. R & Regs. 1240-2-4-.04(3)(2)(ii). Rather, the trial court should "ascertain the reasons for the parent's occupational choices ... [and] assess the reasonableness of these choices in light of the parent's

3

obligation to support his or her child(ren) and to determine whether such choices benefit the children." Tenn. Comp. R & Regs. 1240-2-4-.04(3)(2)(ii). The Guidelines provide that a trial court may consider the following factors when determining whether a parent is voluntarily underemployed:

(I) The parent's past and present employment;

(II) The parent's education, training, and ability to work;

* * *

(IV) A parent's extravagant lifestyle, including ownership of valuable assets and resources(such as an expensive home or automobile) that appears inappropriate or unreasonable for the income claimed by the parent;

(V) The parent's role as caretaker of a handicapped or seriously ill child of that parent, or any other handicapped or seriously ill relative for whom that parent has assumed the role of caretaker which eliminates or substantially reduces the parent's ability to work outside the home, and the need of that parent to continue in that role in the future;

(VI) Whether unemployment or underemployment for the purpose of pursuing additional training or education is reasonable in light of the parent's obligation to support his/her children and, to this end, whether the training or education will ultimately benefit the child in the case immediately under consideration by increasing the parent's level of support for that child in the future;

(VII) Any additional factors deemed relevant to the particular circumstances of the case.

Tenn. Comp. R & Regs. 1240-2-4-.04(3)(2)(iii).

*Hommerding v. Hommerding*, 2009 WL 1684681 (Tenn. Ct. App. June 15, 2009).

In that case, the obligor wife went back to school to obtain an MRI technician license. She testified that even though she previously made $75,000.00 working as an MRI technician, she had never been licensed, and while she was previously permitted to work without a license, once the law changed requiring her to be licensed she was out of a job. *Id.* This Court stated, "In light of the trial court's discretion in this question of fact, we cannot say that the trial court erred by failing to find Wife voluntarily underemployed." *Id.*

Similarly, in the case of *Edgeworth v. Edgeworth*, 2007 WL 2403356 (Tenn. Ct. App. Aug. 23, 2007), this Court found the trial court erred in ruling that the obligor father was voluntarily

4

underemployed where he took a pay cut to go to work for his stepfather's company, but testified that he did so because he did not want to compete with his stepfather, and that he would be salaried and would suffer less fluctuation in his income. The Court stated:

> We recognize the following provision of the Guidelines: "A determination of willful and/or voluntary under or unemployment is not limited to occupational choices motivated only by an intent to avoid or reduce the payment of child support. The determination may be based upon any intentional choice that affects a parent's income." Tenn. Comp. R. & Regs. 1240-2-4-.04(3)(a)(2)(ii)(I) (2006). However, we also note a prior holding of this Court that "if a parent's reasons for working in a lower paying job are reasonable and in good faith, the court will not find him or her to be willfully and voluntarily underemployed." *Richardson v. Spanos*, 189 S.W.3d 720, 726 (Tenn. Ct. App. 2005) (citing *Willis v. Willis*, 62 S.W.3d 735, 738 (Tenn. Ct. App. 2001)). Furthermore, in *Wilson v. Wilson*, we held that "[a]lthough there is no requirement that a parent intended to avoid their child support obligations by their actions, we do think that willful or voluntary unemployment or underemployment must result from an intent on the part of the parent to reduce or terminate his or her income." *Wilson v. Wilson*, 43 S.W.3d 495, 497 (Tenn. Ct. App. 2000). No evidence was submitted at the hearings below to support a finding that Father's changing jobs was the result of an intent by Father to reduce or terminate his income. To the contrary, the evidence preponderates in favor of a finding that Father's choice to leave Lane Furniture and begin working for his stepfather at Ashley Furniture in January of 2006 was reasonable, and made in good faith. This precludes a finding of willful or voluntary underemployment, therefore any imputation of additional income to Father on this basis was erroneous.

*Id.*

In this case the father testified that he decided to leave his employment with Athens because he was no longer receiving increases in pay, and his stress level and the amount of problems he had to deal with were increasing. He testified that he wanted to start his own company because he thought he could increase his income once he got the business going, and he wanted to provide for himself and his family, including his daughter. He testified that in the first year he was in business, he had sold 5 custom homes, despite the rough economic times.

The Trial Court clearly credited father's testimony, and found his reasons for leaving his previous employer to be reasonable.

The mother cites to guideline 1240-2-4-.04(3)(a)(1) and focuses on:

A determination of willful and/or voluntary under or unemployment is not limited to occupational choices motivated only by an intent to avoid or reduce the payment of child support. The determination may be based upon any intentional choice that

5

affects a parent's income. . . .

The mother argues that under the foregoing, the father's act was an intentional choice and that the act adversely affected his income. The foregoing certainly would give a trial court discretion to base its decision on any intentional choice or act that reduced the parent's income, as the guideline uses the term "may". What the mother urges would allow a trial court no discretion, since any time a parent would take a new job at reduced income would reduce the payment of child support. The guideline is contingent upon the factual findings made by the trial court and his discretion in the application of the facts to the particular case.

The evidence does not establish that the father intended to reduce his income as he testified that he hoped to improve his income and standard of living with the growth of his new business. We hold that the mother failed to carry her burden of proof that the father was voluntarily unemployed, and the Trial Court's findings do not preponderate against the weight of the evidence. Tenn. R. App. P. 13(d). Further, we hold the Trial Court did not abuse its discretion in making the child support award.

The mother further argues the Trial Court erred in failing to include the father's withdrawal from his pension as part of his gross income. The father testified that he merely rolled the funds over into a profit sharing plan set up for his new business.

The mother relies upon the case of *Farmer v. Stark*, 2008 WL 836092 (Tenn. Ct. App. Mar. 27, 2008), for her position that money taken out of a retirement account can be counted for child support purposes as part of one's gross income. This is true, since the Guidelines explicitly define gross income as including "wages, salaries, commissions, bonuses, overtime payments, dividends, severance pay, pensions, interest, trust income, annuities, capital gains, benefits received from the Social Security Administration, i.e., Title II Social Security benefits, workers compensation benefits whether temporary or permanent, judgments recovered for personal injuries, unemployment insurance benefits, gifts, prizes, lottery winnings, alimony or maintenance, and income from self-employment." Tenn. Comp. R. & Regs. 1240-2-4-.03(3)(a)(1).

Our cases have held that amounts gained from one's retirement, pension, trust, worker's comp benefits, and even one-time capital gains are included in one's gross income for the purpose of setting child support. *Farmer*, *supra*; *Moore v. Moore*, 2007 WL 4326746 (Tenn. Sept. 5, 2007); *Allen v. Allen*, 2000 WL 1483389 (Tenn. Ct. App. Oct. 10, 2000); *Hobbs v. Hobbs*, 1999 WL 86973 (Tenn. Ct. App. Feb. 23, 1999); *Ford v. Ford*, 1996 WL 560258 (Tenn. Ct. App. Oct. 3, 1996). Thus, if the father had taken a payout from his retirement account, it could be counted as part of his gross income when setting child support.

The father testified, however, that he simply rolled over his retirement from his old employer's plan to his new company's plan. He testified that he did not personally receive the money nor any benefit from it. The fact that he used this to provide capital for his new business is of no consequence, as the Trial Court found, nor does it matter that the father could take a loan from

6

his profit-sharing plan.  If and until the father actually does something to withdraw this money or otherwise receive it as personal income (as was done in all of the cases cited), it is not appropriate for it to be counted for the purpose of setting child support.  We have been cited no authority which hold that a mere retirement rollover, which gives no actual benefit to the obligor, is to be counted as personal income.

The Trial Court properly ruled that these funds should not be included as part of the father's income for the purpose of setting child support.

For the foregoing reasons, we affirm the Judgment of the Trial Court and remand, with the cost of the appeal assessed to Darla Carden Steadham.

_____
HERSCHEL PICKENS FRANKS, P.J.