IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
November 7, 2017 Session

## KELLYE ANN REID v. MITCHELL SHERMAN REID

**Appeal from the Chancery Court for Putnam County**
**No. 2010-121        Ronald Thurman, Chancellor**

_____

### No. M2017-00119-COA-R3-CV

_____

In this post-divorce proceeding the self-employed father of the parties' two children sought a reduction in his child support obligation on the ground that his income had substantially decreased. The mother of the children opposed the petition, asserting that Father was attempting to hide income by referring income-producing business to his brother, who was also self- employed in the same trade; Mother also sought an increase in support due to Father's increase in income and modification of the parenting plan. The trial court held that Father was voluntarily underemployed and that the proof of his income was not credible; concluding that neither party had carried their burden of proof the court denied both petitions insofar as each sought modification of the child support obligation. The court denied Mother's proposed modification of the parenting plan and both parties' request for an award of counsel fees for services rendered in the proceeding. Both parties appeal. Upon a thorough review of the record, we affirm the denial of Father's petition to modify his support obligation and the order denying his counsel fees; we reverse the trial court's holding that Father was underemployed and remand the case for a determination of whether income should be imputed to Father and, if so, whether there has been a significant variance such as to justify an increase in his support obligation; we vacate the order denying Mother's petition to modify the parenting plan and remand the case for the court to make findings of fact and conclusions of law in compliance with Rule 52.01 and, in its discretion, for further consideration; we vacate the order denying Mother attorney's fees.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed in Part, Reversed in Part and Vacated in Part; Case Remanded**

RICHARD H. DINKINS, J., delivered the opinion of the court, in which W. NEAL MCBRAYER and THOMAS R. FRIERSON, II, JJ., joined.

Laurie A. Seber, Cookeville, Tennessee, for the appellant, Kellye Ann Reid.

William F. Roberson, Jr., and Cynthia S. Lyons, Cookeville, Tennessee, for the appellee, Mitchell Sherman Reid.

**OPINION**

## I. FACTUAL AND PROCEDURAL HISTORY

Kellye Ann Reid ("Mother") and Mitchell Sherman Reid ("Father") were granted an absolute divorce on May 25, 2011. In the Permanent Parenting Plan ("the Plan"), which was incorporated into the final decree, they were granted equal parenting time, and Mother was designated as primary residential parent; Father was ordered to pay $814.00 in monthly child support and granted the right to claim the couple's two children as dependents for federal income tax purposes.

Between the time they were divorced and the filing of the petitions which form the basis of this appeal, Mother and Father filed numerous motions and petitions for contempt. On October 21, 2011, the trial court granted a petition filed by Father to modify his support obligation, decreasing it to $672.00 per month. The trial court modified Father's support obligation a second time on August 26, 2014, decreasing it to $288.00.

On May 26, 2015, Father filed a Petition ("Father's Petition") that asked the court to modify his support obligation "to a more equitable amount." As grounds for the petition, Father asserted that his "income [was] significantly lower than in previous years and the [Mother]'s income [had] increased" and his lowered income represented a "material change of circumstances as well as a significant variance."

Mother answered on June 26, asserting that "[Father] is attempting to hide income that he is earning. [Father] continues to increase his employee brother's income while [Father]'s income continues to decrease according to him. [Father] is self-employed and can easily hide assets and income by paying family members unwarranted amounts and/or putting assets in others' names"; that her income had not increased "to the point that it would constitute a significant variance"; and that there had not been a material change in circumstances.

On July 10, Mother counter-petitioned, seeking to modify the time at which she is required to pick up and drop off the children with Father, modify the method by which Father pays his support obligation, eliminate the two weeks of visitation Father receives in the summer under the parenting plan, and modify Father's support obligation to reflect the diminished time the children would spend with him if his two weeks of summer visitation were eliminated. Father answered on August 10. On January 15, 2016, Mother moved to amend her Counter-Petition. Attached to her motion was an amended counter-petition, alleging that Father "has increased earnings that would warrant an increase in

2

child support. The increase is a significant variance and should be reflected in the calculation of child support."[1]

On September 19, the trial court held a hearing and ruled from the bench; the trial court entered an order memorializing its ruling on December 13. In that order, the trial court denied both petitions, finding Father was underemployed, the burden to modify Father's support obligation was not met by either party, and there was not a material change of circumstances sufficient to justify modification of the Plan. Both parties appeal the denial of their respective petition, contending that the court erred in not finding a significance variance in Father's support obligation calculated in accordance with the Child Support Guidelines.

## II.    STANDARD OF REVIEW

Review of the trial court's findings of fact is *de novo* upon the record accompanied by a presumption of correctness, unless the preponderance of the evidence is otherwise. *See* Tenn. R. App. P. 13(d); *Kaplan v. Bugalla*, 188 S.W.3d 632, 635 (Tenn. 2006). If the trial court made no specific findings of fact, then we must look to the record to "determine where the preponderance of the evidence lies." *Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002). Review of the trial court's conclusions of law is *de novo* with no presumption of correctness afforded to the trial court's decision. *See Kaplan*, 188 S.W.3d at 635.

Modification of a child support obligation is governed by Tennessee Code Annotated section 36-5-101(g);[2] a court cannot modify child support unless the party moving to modify the obligation proves that there is a "significant variance . . . between the guidelines and the amount of support currently ordered."[3] A significant variance is defined as "at least a fifteen percent (15%) change between the amount of the current support order (not including any deviation amount) and the amount of the proposed presumptive support order." Tenn. Comp. R. & Regs. 1240-2-4-.05(2)(c). In other

---

[1] Father opposed the motion. The record does show that the court ruled on the motion; however, the court ruled on the issues raised in the motion in its order entered on December 13, 2016. Neither party raises the lack of an order granting Mother's motion to amend as an issue in this appeal.

[2] Tennessee Code Annotated section 36-5-101(g)(1) provides:

> Upon application of either party, the court shall decree an increase or decrease of support when there is found to be a significant variance, as defined in the child support guidelines established by subsection (e), between the guidelines and the amount of support currently ordered, unless the variance has resulted from a previously court-ordered deviation from the guidelines and the circumstances that caused the deviation have not changed. . . .

[3] The parent seeking to modify a child support obligation has the burden to prove that a significant variance exists. *Wine v. Wine*, 245 S.W.3d 389, 394 (Tenn. Ct. App. 2007) (citing *Turner v. Turner*, 919 S.W.2d 340, 345 (Tenn. Ct. App. 1995)).

words, "a parent must prove (1) the amount of his or her current net income and (2) the existence of a 'significant variance' between his or her current child support obligation and the obligation that would be required by the Child Support Guidelines based on his or her current income." *Chorost v. Chorost*, No. M2000-00251-COA-R3-CV, 2003 WL 21392065, at *6 (Tenn. Ct. App. June 17, 2003) (footnotes omitted).

## III. ANALYSIS

Father is a self-employed subcontractor for a company called Dr. Vinyl; his work consists mostly of performing interior, windshield, and upholstery repair on automobiles. Father testified that for every job he does for Dr. Vinyl, he gets seventy percent of the total price listed on the invoice; he then has to pay all business expenses associated with the job, and the remainder is his personal income. He testified that he is responsible for covering all of his expenses, including materials and supplies, contract labor, mileage, and phone and internet. Father testified that "99.9" percent of his income each year is earned through his work with Dr. Vinyl, but that there might be some "retail" money[4] that is not accounted for in his Internal Revenue Service form 1099's from Dr. Vinyl.

In its December 13 Order, the trial court made the following findings:

2.) The legal basis, the factual basis, and the conclusions of the Court are based on the following: that the Petitioner has reduced the time he works at his trade from full-time, so that he can spend time with the children. The Court finds the Petitioner has reduced the amount of time he works with his business and has diverted some of the available business to his brother, whose income has increased. The Court finds the Petitioner's income has stagnated or has slightly increased[.]

3.) Specifically, the Court finds the Petitioner, in exhibits 30, 31, and 32, was making approximately $56,000 per year, and now he is down in the $40,000/yr. range. As such, the Court finds that the Petitioner is intentionally underemployed, whereas the mother continues to work full-time.

4.) The Court finds the Petitioner has not carried his burden with respect to proving Petitioner's expenses necessary to produce his income. The Petitioner's expenses provided at trial indicate an amount which is approximately 75% of the Petitioner's gross sales. The Court finds that this

---

[4] Father explained that "retail money" is money that is paid in cash for repair work he performs. Father explained that prior to his divorce, he earned five or six thousand dollars a year in "retail" money; he did not specify what, if any, "retail" money he earned in years since the divorce. He testified that any "retail money" earned would be logged in Schedule C of his federal tax return as part of his gross receipts.

amount is significantly higher than in the three years prior to the filing of the instant petition.

5.) The Court finds that a significant portion of the Petitioners available income is going to his brother, Mr. Benjamin Reid, and the Court further finds that Mr. Benjamin Reid's expenses are only 10% of his income when compared to the Petitioner's 75% of his income, and they do the same kind of work.

6.) Furthermore, the Court finds that some of the expenses Petitioner claims are not allowable: depreciation, some of the meals, the Court further finds that other expenses while allowable, were not properly broken down. The Court therefore finds that some of the expenses are not appropriate.

7.) Court further finds that it has concerns over the concept of "retail income." The Court finds the Petitioner testified that a certain amount of "retail sales" could be kept by the subcontractors of Dr. Vinyl. The Respondent testified in years' past, (prior to divorce) that the amount would be $5,000.00 or $6,000.00 a year. Witness for the Respondent, Tera Hawkins, Co-owner of Dr. Vinyl, testified that she was not aware of such a practice. The Court has concerns that one of two realities exist: either the income is not being reported to the IRS, or the money should be going to Dr. Vinyl.

As evidence of his business income, Father produced the 1099 forms showing the compensation that he received from Dr. Vinyl from 2010 through 2015:

- 2010: $127,150.61.
- 2011: $104,077.07
- 2012: $111,486.54
- 2013: $125,268.64
- 2014: $152,911.14
- 2015: $166,226.07

Schedule C of Father's federal tax returns showed the following amounts for business expenses for those years:

- 2010: $53,983
- 2011: $25,052
- 2012: $50,925
- 2013: $68,534
- 2014: $90,537
- 2015: $92,581

5

As other evidence of his business expenses, Father prepared and introduced into evidence what he called "expense summaries," which were prepared from personal and business bank statements, and business invoices for the years 2013 through 2015:

- 2013: $88,676.73
- 2014: $110,192.24
- 2015: $120,927.35[5]

The "expense summaries" and 1099 forms support the trial court's finding that Father's business expenses in 2013, 2014, and 2015 were approximately 75% of his business income for those years; we agree that this was a significantly higher amount than in prior years.

Father's brother, Ben Reid, testified that he owns and runs a sole proprietorship and is the sole employee of Auto Magic, which engages in the same type of work as Father; that he is a subcontractor for Father; that Father tells him which of Father's accounts Father wants him to service and he will do so; and testified that the "bulk" of his earnings in 2014 and 2015 came from Father. Ben Reid's tax returns from 2013 through 2015 were entered into evidence, and the 1099s he received from Father showed that he earned the following amounts through his subcontracting relationship with Father:

- 2013: $46,290.30[6]
- 2014: $61,815.50[7]
- 2015: $55,463.80[8]

During 2013 through 2015, Ben Reid reported the following business expenses on his federal income tax returns:

- 2013: $16,833
- 2014: $8,290
- 2015: $4,343[9]

---

[5] There is no explanation in the record for the discrepancy between the figures in the Schedule C's and those in the expense summaries.

[6] During this year, Ben Reid's total gross receipts for Auto Magic were $84,042.

[7] During this year, Ben Reid's total gross receipts for Auto Magic were $67,131.

[8] During this year, Ben Reid's total gross receipts for Auto Magic were $60,870.

[9] These amounts are exclusive of "car and truck expenses."

Father's and Ben Reid's tax returns and their testimony support the trial court's finding that Ben Reid's expenses were "10% of his income" while Father's expenses were "75% of his income" even though "they do the same kind of work." This same evidence also supports the trial court's finding that "a significant portion of the [Father]'s available income is going to [Ben Reid]."

As evidence of his personal income, Father produced tax returns from 2010 through 2015. These tax returns showed the following relevant figures:

- 2010: Total Income, $59,069; Adjusted Gross Income, $51,646
- 2011: Total Income, $59,977; Adjusted Gross Income, $46,160
- 2012: Total Income, $50,925; Adjusted Gross Income, $38,743
- 2013: Total Income, $41,846; Adjusted Gross Income, $36,472
- 2014: Total Income, $41,308; Adjusted Gross Income, $36,780
- 2015: Total Income, $46,780; Adjusted Gross Income, $43,475[10]

Father's income tax returns and testimony support the trial court's finding that Father "was making approximately $56,000 per year" during 2010, 2011, and 2012 and now he is down in the $40,000/yr. range."

## A.      Father's Petition to Modify his Child Support Obligation

Father argues in his brief that "[t]he numbers speak for themselves" and show a significant variance for purposes of modifying his support obligation; we do not agree. Tenn. Comp. R. & Regs. 1240-2-4-.05(3) states that "[t]o determine if a modification is possible, a child support order shall first be calculated on the Child Support Worksheet using current evidence of the parties' circumstances"; in order to do this, the trial court must have credible evidence of the "parties' circumstances," e.g., income. There was no testimony or other evidence that explained the increase in Father's expenses as a percentage of gross receipts over the pertinent years; neither was there an explanation for the fact that Father's gross receipts went up substantially in 2013, 2014, and 2015, while his income decreased substantially in those same years. Further, the evidence showed

---

[10] The difference in Father's total income and adjusted gross income for each year was due to deductions for Self-Employment Tax, Alimony, and Health Insurance:

- 2010: Self-Employment Tax Deduction, $4,173; Alimony Deduction, $3,250
- 2011: Self-Employment Tax Deduction, $4,230; Alimony Deduction, $7,150; Health Insurance Deduction, $2,437
- 2012: Self-Employment Tax Deduction, $3,597; Alimony Deduction, $5,850; Self-Employed Health Insurance Deduction, $2,735
- 2013: Self-Employment Tax Deduction, $2,957; Health Insurance Deduction, $2,417
- 2014: Self-Employment Tax Deduction, $2,919; Health Insurance Deduction, $1,609
- 2015: Self-Employment Tax Deduction, $3,305

that Ben Reid's expenses were a much lower percentage of his gross receipts than Father's. In discussing the evidence of Father's income and expenses, the trial court found that the "proof in this matter [was] not credible" and "the burden to modify the current child support amount is not met by either party." Neither Mother nor Father dispute these findings.

The trial court did not have credible evidence from which to determine Father's true income for purposes of the significant variance calculation. The evidence does not preponderate against the trial court's determination that Father did not meet his burden to modify the child support. Accordingly, we affirm the trial court's ruling that Father failed to meet his burden of showing a significant variance and denying his motion to modify his support obligation.

### B. Mother's Petition to Modify

#### 1. *Child Support*

In her petition, Mother argued that Father's income had increased, and the increase warranted an increase in Father's support obligation. In this regard, the trial court found that Father was intentionally underemployed, but did not impute income to the Father for purposes of calculating whether there was a significant variance upward that would require an increase in Father's support obligation. Mother argues that the court should have imputed income to Father, which would have resulted in an upward modification of his obligation; further, she contends Father's income has actually increased, also justifying an increase.

We first address Father's argument that the trial court erred in finding that he was underemployed because the issue of underemployment was not raised in Mother's pleadings. This argument is without merit. Father alleged in the petition to modify that "his income is significantly lower than in previous years" and that this "constitute[s] a material change of circumstance as well as a significant variance." In her answer, Mother asserted that Father "is attempting to hide income that he is earning", that he "continues to increase his employee brother's income while Petitioner's income continues to decrease," and that Father "is self-employed and can easily hide assets and income by paying family members unwarranted amounts." In her amended counter-petition, Mother specifically requested that Father's child support obligations "be modified and increased to what the Tennessee Child Support Guidelines require."

Father's petition, Mother's answer, and her counter-petition each required the court to determine Father's income; in Father's instance, from self-employment. *See* Tenn. Comp. R. & Regs. 1240-2-4-.04(3)(a)(1)(iv). The allegations in Mother's answer and amended counter-petition called into question the reliability of the evidence of Father's income, thereby placing him on notice that income might be imputed to him in

accordance with regulation 1240-2-4-.04(3)(a)(2)(i); inasmuch as a finding of willful underemployment is also cause to impute income pursuant to the regulation, coupled with his request for a modification of his support, Father was on notice of the issue of underemployment.

Father next argues that the evidence preponderates against the finding that he is intentionally underemployed.

The determination that a parent is underemployed is a question of fact and requires "careful consideration of all the attendant circumstances." *Richardson v. Spanos*, 189 S.W.3d 720, 726 (Tenn. Ct. App. 2005). "Thus, this court reviews a trial court's determination regarding willful and voluntary underemployment using Tenn. R. App. P. 13(d) and accords substantial deference to the trial court's decision, especially when it is premised on the trial court's singular ability to ascertain the credibility of the witnesses. *Id.* (citations omitted). A trial court is to consider the following factors in determining whether a parent is willfully or voluntarily underemployed:

(I)     The parent's past and present employment;

(II)    The parent's education, training, and ability to work;

(III)   [Whether a parent is a stay-at-home parent];

(IV)    A parent's extravagant lifestyle . . . ;

(V)     The parent's role as caretaker of a handicapped or seriously ill child of that parent, or any other handicapped or seriously ill relative for whom that parent has assumed the role of caretaker which eliminates or substantially reduces the parent's ability to work outside the home, and the need of that parent to continue in that role in the future;

(VI)    Whether unemployment or underemployment for the purpose of pursuing additional training or education is reasonable in light of the parent's obligation to support his/her children and, to this end, whether the training or education will ultimately benefit the child in the case immediately under consideration by increasing the parent's level of support for that child in the future;

(VII)   Any additional factors deemed relevant to the particular circumstances of the case.

Tenn. Comp. R. & Regs. 1240-2-4-.04(3)(a)(2)(iii).

9

Based on the evidence that Father's income decreased from $56,000 to $40,000 the trial court held that Father was intentionally underemployed. Upon our review of the entire record, we do not find support for this holding. While there is substantial and credible evidence that Father was inflating his expenses and assigning a substantial portion of his income-producing business to his brother, this does not constitute intentional underemployment within the meaning of the regulation. Accordingly, we reverse the trial court's finding that Father was underemployed.

This does not end the inquiry. As noted, the evidence shows, and the trial court found, that Father's business expenses were inexplicably higher in 2013, 2014, and 2015, and that Father's evidence of his income was not credible. While this does not lead to a conclusion that Father was underemployed, a lack of credible proof of income does function as another ground for imputation of income under Tenn. Comp. R. & Regs. 1240-02-04-.04(3)(a)(2)(i)(II). Accordingly, we remand the case for the trial court to determine Father's income in accordance with this regulation and use that income to determine whether there has been a significant variance that would, as Mother argues, justify an increase in Father's support obligation.[11]

### 2. *The Permanent Parenting Plan*

The Plan provided that, when exchanging the children, the party receiving the children would pick up the children at either "daycare, school or the other parent's residence"; the Plan did not set the time at which the children would be picked up at one of the parties' residence. On January 27, 2015, the trial court entered an order in which it found that the Plan should be modified to "accommodate [Mother]'s Summer work schedule" and therefore ruled that "[d]uring Summer months [Mother] shall drop the children off at [Father]'s residence at 7:30 a.m."

In her Counter-Petition, Mother requested that the Plan be modified so that 7:30 a.m. would be the time at which both parties exchanged the children year round, arguing that "it is extremely hard for [Mother] to get to work on time otherwise, and a regular drop off / pickup time creates less confusion and more continuity." The trial court ruled that there was not a "material change in circumstances sufficient to justify" modification of the Plan and that it "previously addressed this issue and declines to modify the same." Mother argues in her brief that "[t]he Court's ruling on this matter is contrary to reason and certainly not in the children's best interests."

Under Tennessee Code Annotated section 36-6-101, a parent petitioning to modify the residential parenting schedule must "prove by a preponderance of the evidence a material change of circumstance affecting the child's best interest." "A trial court's determinations of whether a material change in circumstances has occurred and whether

---

[11] This addresses Mother's assertion that the trial court erred by not imputing income upon finding that Father was intentionally underemployed;

10

modification of a parenting plan serves a child's best interests are factual questions. *Armbrister v. Armbrister*, 414 S.W.3d 685, 692 (Tenn. 2013).

The trial court did not make any factual findings on Mother's request to modify the Plan or otherwise explain why it declined to modify the plan as requested by Mother. "We have repeatedly emphasized the importance of providing findings of fact and conclusions of law in accordance with Rule 52.01 of the Tennessee Rules of Civil Procedure." *Brainerd v. Brainerd*, No. M2015-00362-COA-R3-CV, 2016 WL 6996365, at *5 (Tenn. Ct. App. Nov. 30, 2016) (citing *Burnett v. Burnett*, No. M2014-00833-COA-R3-CV, 2015 WL 5157489, at *4-5 (Tenn. Ct. App. Aug. 31, 2015)). This is "not a mere technicality," and "'[s]imply stating the trial court's decision, without more, does not fulfill this mandate.'" *Brainerd*, 2016 WL 6996365, at *5 (quoting *Barnes v. Barnes*, No. M2011-01824-COA-R3-CV, 2012 WL 5266382, at *8 (Tenn. Ct. App. Oct. 24, 2012)). "When confronted with insufficient findings of fact," an appellate court may "vacate the decision and remand so that the trial court can make specific findings of fact and conclusions of law" or "conduct a de novo review of the record to determine where the preponderance of the evidence lies." *Brainerd*, 2016 WL 6996365, at *5.

We vacate the holding in this regard and remand the case for the court to make findings of fact and conclusions of law in compliance with Rule 52.01 pertinent to this issue or, in its discretion, to revisit the issue.

## C.     Attorneys' Fees.

Mother argues that the trial court erred by not awarding her attorney's fees under Tennessee Code Annotated 36-5-103(c)[12]; Father argues the trial court properly ruled that each party would be responsible for their own attorney's fees.

The decision to award attorney's fees under subsection 36-5-103(c) is within a trial court's discretion. *Richardson*, 189 S.W.3d at 729. We review a trial court's decision concerning attorney's fees under the abuse of discretion standard and will only reverse a trial court's decision where the trial court applies an incorrect legal standard, reaches a decision that is illogical, bases its decision on a clearly erroneous assessment of the evidence, or employs reasoning that causes an injustice to the complaining party. *Id.*

---

[12] Tennessee Code Annotated section 36-4-103(c) provides:

> A prevailing party may recover reasonable attorney's fees, which may be fixed and allowed in the court's discretion, from the non-prevailing party in any criminal or civil contempt action or other proceeding to enforce, alter, change, or modify any decree of alimony, child support, or provision of a permanent parenting plan order, or in any suit or action concerning the adjudication of the custody or change of custody of any children, both upon the original divorce hearing and at any subsequent hearing.

(citing *Perry v. Perry,* 114 S.W.3d 465, 467 (Tenn. 2003); *Clinard v. Blackwood,* 46 S.W.3d 177, 182 (Tenn. 2001)).

Inasmuch as we have remanded the case for further proceedings relative to the modification of support, we vacate the order denying Mother's application for fees and remand that issue for reconsideration after completion of proceedings on remand; we affirm the order denying Father's fees.

Additionally, both parties request their attorney's fees for this appeal. As this Court has stated:

[I]t is in the sole discretion of this court whether to award attorney's fees on appeal. As such, when this Court considers whether to award attorney's fees on appeal, we must be mindful of the ability of the requesting party to pay the accrued fees, the requesting party's success in the appeal, whether the requesting party sought the appeal in good faith, and any other equitable factor that need be considered.

*Spigner v. Spigner,* No. E2013-02696-COA-R3-CV, 2014 WL 6882280, at *13 (Tenn. Ct. App. Dec. 8, 2014) (citations omitted). Considering the circumstances of this case, in our discretion, we decline to award fees to either party.

## IV. CONCLUSION

For the foregoing reasons, we affirm the court's decision denying Father's petition to modify his support obligation and the order denying Father his counsel fees; we reverse the trial court's holding that Father was underemployed and remand the case for a determination of whether income should be imputed to Father and, if so, whether there has been a significant variance such as to justify an increase in Father's support obligation; we vacate the order denying Mother's petition to modify the parenting plan and remand the case for the court to make findings of fact and conclusions of law in compliance with Rule 52.01 and, in its discretion, for further consideration; we vacate the order denying Mother attorney's fees.

_____
RICHARD H. DINKINS, JUDGE

12