IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
June 23, 2020 Session

## WILLIAM CHASE KNIPPER v. ERIN ELIZABETH ENFINGER

Appeal from the Juvenile Court for Chester County
No. 2017-JV-1707   Larry McKenzie, Judge

_____

### No. W2019-02130-COA-R3-JV

_____

Mother appeals the trial court's rulings changing the surname of the child, denying awards of retroactive child support and uncovered medical expenses, and allowing Father to seek modification of the residential schedule without showing a material change in circumstances. We vacate the trial court's award of a deviation of child support because the trial court did not make the required findings under Tennessee Code Annotated section 36-2-311 and the Child Support Guidelines. As to the remaining issues, we reverse.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Reversed in Part, Vacated in Part, and Remanded**

J. STEVEN STAFFORD, P.J., W.S., delivered the opinion of the court, in which ARNOLD B. GOLDIN and KENNY W. ARMSTRONG, JJ., joined.

J. Noble Grant, II, Jackson, Tennessee, for the appellant, Erin Elizabeth Enfinger.

Mary Jo Middlebrooks, Jackson, Tennessee, for the appellee, William Chase Knipper.

## OPINION

### BACKGROUND

Appellant Erin Elizabeth Enfinger ("Mother") and Appellee William Chase Knipper ("Father") are the parents of a child born in July 2017. Two days after the child was born, Father filed a petition to establish parentage in Chester County Juvenile Court ("trial court"). Therein, Father asked to be named the Father of the child and for the court to make a determination as to the surname of the child. Father later filed a proposed parenting plan in which he asked to be named the child's primary residential parent. A final hearing occurred on June 7, 2018. By the time of trial, Father had changed his position and no

longer sought to be named the primary residential parent of the child. Father asked, however, that his parenting time with the child be structured to work best with his new work schedule.

At trial, the parties disputed the efforts that Mother and Maternal Grandmother had taken to prevent Father's access to the child.[1] The trial court took judicial notice of the fact that Mother and Maternal Grandmother had sought an order of protection against Father based on alleged threats and severe violence.[2] The trial court noted that the order had been denied because the allegations were not believed.

According to Father, the petition for an order of protection was just one of many efforts that Mother and her family took to prevent him from seeing the child. In one instance at Thanksgiving 2017, Father admitted that he was required to promise that he would pay Mother $5,000.00 just to see the child; Father paid only $1,000.00 and was given a receipt from Mother indicating that the payment went toward medical expenses. Father testified that he made five or six $300.00 child support payments; Mother submitted documentary proof that Father made four such payments.

After the hearing, the trial court entered an order and permanent parenting plan on August 7, 2018. Therein, the trial court ruled that Mother and her family had engaged in a pattern of harassing behavior designed to prevent Father from seeing his child and that Mother lacked credibility. The trial court therefore ruled that the child's surname would be changed to Knipper for two reasons: (1) because Mother's brother had a felony conviction; and (2) to discourage Mother from future attempts to prevent Father's relationship with Mother. The court further ruled that Mother would be named primary residential parent and Father would be awarded generally standard visitation. The court warned, however, that future interference with Father's parental rights would lead to a change in custody.

The trial court further ruled that "the parties reached an equitable agreement as to past medical bills and the $1000 paid by the Father to the [Maternal] Grandmother fulfills his obligation for any and all medical bills." Finally, the trial court ruled that the "current visitation is based upon the tender age of the child and the Father will not be required to show any changed circumstance in order to request the court to modify visitation of said child in the future."

On August 31, 2018, Mother filed a motion to alter or amend. Therein, Mother asked that Father be formally declared the parent of the child and argued that (1) the trial court erred in changing the child's surname; (2) the trial court's order failed to calculate retroactive support to the child's birth; (3) the payment of $1,000.00 did not represent an equitable share of Mother's medical bills, which totaled over $4,000.00; (4) Tennessee law requires that future changes to the parenting plan be based on a material change in

---

[1] Mother was a minor throughout the trial court proceedings.
[2] A recitation of the specific nature of the allegations is not necessary for resolution of this appeal.

circumstances; and (5) the parenting plan should be more concrete to prevent future disputes.

The trial court ruled on the motion on November 7, 2019. The trial court formally established parentage and modified the day-to-day schedule, but denied Mother's request regarding the child's surname. With regard to future modifications, the trial court clarified its ruling: "If Father seeks to be named the primary residential parent, he will have to carry the burden of proof, but no such burden of proof shall apply to a request by Father to modify the parenting plan." The trial court denied Mother's request regarding medical bills and retroactive support. With regard to retroactive support, the trial court relied in part on Mother's efforts to thwart Father's ability to parent the child. The trial court again noted that an agreement existed with regard to medical bills. Mother thereafter timely appealed.

## ISSUES PRESENTED

Mother raises the following issues, which are taken from her brief:

1. The trial court erred in granting Father's request to change the child's surname.

2. The trial court erred by not awarding retroactive child support to Mother and for finding that an equitable agreement was reached by the parties in respect to payment of uncovered medical expenses associated with Mother's prenatal care and the birth of the child.

3. The trial court erred by ordering that Father does not have to prove a material change in circumstances to support a request to modify the parenting plan or visitation.

## STANDARD OF REVIEW

It is well settled that, in matters of child support, child custody, visitation and related issues, trial courts are given broad discretion; consequently, appellate courts are reluctant to second-guess a trial court's determinations regarding these important domestic matters. *See **Armbrister v. Armbrister***, 414 S.W.3d 685, 693 (Tenn. 2013); ***Harwell v. Harwell***, 612 S.W.2d 182, 185 (Tenn. Ct. App. 1980). As explained in *Richards on Tennessee Family Law*:

Appellate courts correct errors. When no error in the trial court's ruling is evident from the record, the trial court's ruling must stand. This maxim has special significance in cases reviewed under the abuse of discretion standard. The abuse of discretion standard recognizes that the trial court is in a better position than the appellate court to make certain judgments. The abuse of discretion standard does not require a trial court to render an ideal order, even in matters involving visitation, to

- 3 -

withstand reversal. Reversal should not result simply because the appellate court found a "better" resolution.

Janet L. Richards, *Richards on Tennessee Family Law* § 9-2 (2d ed. 2004) (quoting **Eldridge v. Eldridge**, 42 S.W.3d 82, 85 (Tenn. 2001)).

## DISCUSSION

## I.

The first issue raised by Mother is the trial court's decision to change the child's surname to that of Father. Generally, the surname of a child born to an unmarried woman is the "surname of the mother;" the "mother's maiden surname;" or a combination thereof. *See generally* Tenn. Code Ann. § 68-3-305(b)(1). The same statute, however, provides a trial court adjudicating a parentage action some authority to order the surname of a child changed: "In any case in which paternity of a child is determined by a court of competent jurisdiction, the name of the father and surname of the child shall be entered on the certificate of birth in accordance with the finding and order of the court." Tenn. Code Ann. § 68-3-305(c). Such a requested change was previously discussed by this Court as follows:

> The courts should not change a child's surname unless the change promotes the child's best interests. Among the criteria for determining whether changing a child's surname will be in the child's best interests are: (1) the child's preference, (2) the change's potential effect on the child's relationship with each parent (3) the length of time the child has had its present surname, (4) the degree of community respect associated with the present and proposed surname, and (5) the difficulty, harassment, or embarrassment that the child may experience from bearing either its present or its proposed surname. The parent seeking to change the child's surname has the burden of proving that the change will further the child's best interests.

**Barabas v. Rogers**, 868 S.W.2d 283, 287 (Tenn. Ct. App. 1993) (citations omitted). Furthermore, "[t]he amount of proof required to justify the change is 'not insubstantial.'" **In re A.C.S.**, No. M2008-898-COA-R3-JV, 2009 WL 348510, at *3 (Tenn. Ct. App. Feb. 12, 2009) (quoting **Brown v. Baird**, No. 01A01-9704-JV-00148, 1997 WL 638278, at *1 (Tenn. Ct. App. Oct. 17, 1997)). "Minor inconvenience or embarrassment" is not sufficient. **Brown**, 1997 WL 638278, at *1.

The trial court's order makes only the following findings in support of its decision to change the child's surname:

> The last name of the child shall be Knipper based firstly on the brother of the Mother who has a felony conviction and secondly the changing of the name to Knipper might influence Mother and Grandmother to cease their attempt

to prevent the father from seeing his child. The court rules that a change in the name of the minor child is in the best interest of the child.

Respectfully, the trial court's order is insufficient.

Rule 52.01 of the Tennessee Rules of Civil Procedure provides that "[i]n all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment." "There is no bright-line test by which to assess the sufficiency of factual findings, but the findings of fact must include as much of the subsidiary facts as is necessary to disclose to the reviewing court the steps by which the trial court reached its ultimate conclusion on each factual issue." *Lovlace v. Copley*, 418 S.W.3d 1, 35 (Tenn. 2013) (internal quotation marks and citations omitted). This Court has held that Rule 52.01's requirements are particularly important when reviewing a trial court's discretionary decision, as "this Court cannot determine whether the trial court abused its discretion" in the absence of factual findings by the trial court. *Halliday v. Halliday*, No. M2011-01892-COA-R3-CV, 2012 WL 7170479, at *12 (Tenn. Ct. App. Dec. 6, 2012), *perm. app. denied* (Tenn. Apr. 11, 2013); *see also In re Connor S.L.*, No. W2012-00587-COA-R3-JV, 2012 WL 5462839, at *4 (Tenn. Ct. App. Nov. 8, 2012) (noting that "findings of fact are particularly important in cases involving the custody and parenting schedule of children," and without such findings "we are unable to afford appropriate deference to the trial court's decision"). Moreover, a trial court abuses its discretion "when it fails to properly consider the factors on that issue given by the higher courts to guide the discretionary determination." *State v. Lewis*, 235 S.W.3d 136, 141 (Tenn. 2007) (citing Martha S. Davis, *Standards of Review: Judicial Review of Discretionary Decisionmaking*, 2 J. App. Prac. & Process 47, 58 (2000)).

Recently, this Court was similarly faced with a deficient order on a name change request. *See In re Khrystchan D.*, No. M2018-01107-COA-R3-JV, 2020 WL 3494467 (Tenn. Ct. App. June 26, 2020). Therein, we noted that while the *Barbaras* factors "are to guide the court in its consideration of the proposed name change" it does not follow that "any deviation in the articulation of those factors, or . . . [the] fail[ure] to make a finding as to any factor in the absence of proof as to that factor, is error[.]" *Id.* at *6. Nevertheless, we held that a conclusory finding that a name change would not harm the child, that the father's name was respected in the community, and that the child's age supported the name change was insufficient,[3] given that a name change is "an inherently a fact intensive issue."

---

[3] Specifically, the trial court's order in *In re Khrystchan D.* stated as follows with regard to the name change:

> In this case, this Court does find that Father has met the burden of proof that a change in the child's surname would be in her best interest. This Court holds that it is in the best interest of the minor child for her Father's last name of "A[.]" to be her surname, changing the minor child's name to "Khrystchan A. N. A[.]" The Father has shown that a change in the name would not harm the child. The "A[.]" name is a respected name in the community. Furthermore, this is an appropriate age for the name of the child to be changed as she has yet to begin Kindergarten.

*Id.* We therefore vacated the judgment of the trial court and remanded for the court to enter an order containing appropriate findings. *Id.*

The trial court's order in this case is similarly deficient. Indeed, the court's ruling here contains even less consideration of the applicable factors than that made by the trial court in *In re Khrystchan D.* Accordingly, it would be appropriate to vacate this portion of the trial court's judgment and remand for the entry of a more appropriate order. *See Lovlace*, 418 S.W.3d at 36 ("One remedy appellate courts typically apply when a trial court's factual findings fail to satisfy the Rule 52.01 requirement is to remand the case to the trial court with directions to issue sufficient findings and conclusions."). This Court, however, has a second option in this situation: "an appellate court may choose to remedy the trial court's deficient factual findings by conducting a de novo review of the record to determine where the preponderance of the evidence lies." *Lovlace*, 418 S.W.3d at 36. Because of the relatively small record on appeal and the dearth of evidence presented on this issue, we choose to employ the latter remedy. We will therefore proceed to discuss whether sufficient evidence was presented by Father to support his requested name change.

Father was questioned specifically regarding the *Barabas* factors. Most of the factors, however, did not support his request.[4] For example, when asked about "the change's potential effect on the child's relationship with each parent," Father answered that the change would not affect his relationship with the child and that he did not know whether the change would affect the child's relationship with Mother. *Barabas*, 868 S.W.2d at 287. This testimony certainly does not show that a change is in the child's best interest. Father's request fares somewhat better as to the next factor: "the length of time the child has had its present surname[.]" *Id.* While the child had Mother's surname for its entire life, the child was not yet one-year old at the time of trial. Father also admitted that there was no "difficulty, harassment, or embarrassment that the child may experience from bearing either its present or its proposed surname." On the whole, these factors therefore provide little to no support for the name change.

Indeed, the only factor that Father presented any evidence of was regarding "the degree of community respect associated with the present and proposed surname[.]" *Id.* The evidence of this factor, however, was minimal at best. In essence, Father testified that Mother's half-brother had been convicted of a felony. Mother admitted that her half-brother had been sentenced to three years in prison for a crime, but could not testify as to any specifics. There was no evidence, however, that a single conviction by Mother's half-sibling for an unknown crime at an unknown time had caused her family name to lose respect in the community. Accordingly, we cannot conclude that the evidence supports a finding that this factor favors the name change.

---

*Id.* at *6.

[4] The first factor, the child's preference, was not relevant, due the child's young age. *Barabas*, 868 S.W.2d at 287.

- 6 -

The trial court did consider an additional factor: Mother's and Grandmother's interference in Father's relationship with the child. Additionally, Father testified that it was his strong preference to have the child carry his name in order to carry on his family lineage. Although the trial court was permitted to consider all relevant factors, we conclude that these facts were not sufficient to support the name change.

As an initial matter, "[t]he mere preference of a parent is not a reason to justify a name change[.]" *Howell v. Smithwick*, No. E2016-00628-COA-R3-CV, 2017 WL 438620, at \*12 (Tenn. Ct. App. Feb. 1, 2017) (citing *Whited v. Fleenor*, No. E2002-01185-COA-R3-JV, 2003 WL 1092968, at \*2 (Tenn. Ct. App. Mar. 13, 2003) (stating that "[t]here is nothing to indicate in the best interest analysis that incorporates as a relative factor the mere preference of a parent to bestow his or her name")). Father's testimony that he "would just like him to have my name" is therefore not sufficient to show that the name change was in the child's best interest.

Moreover, this Court has previously held that a trial court's "concern over [m]other's previous attempts to thwart the relationship between [f]ather and child and [the court's] belief that changing the child's surname would somehow strengthen the relationship between the child and Father" was insufficient to support a name change. *Howell*, 2017 WL 438620, at \*13. The Court ruled, however, that Father presented no evidence that changing the child's surname would improve the father's relationship with the child. *Id.* We were therefore required to reverse the decision of the trial court. *Id.*

The trial court used essentially the same reasoning in the case-at-bar, opining that the name change "might influence Mother and Grandmother to cease their attempt to prevent the father from seeing his child[.]" However, no evidence was presented to support this finding. Indeed, as previously discussed, Father even testified that the change would not have "a potential effect on [the child's] relationship with [him.]"[5] As such, there is simply no evidentiary support for the trial court's finding that changing the child's surname was in his best interest. The trial court erred in granting Father's request.

## II.

Mother next argues that that the trial court erred in denying her request for Father to pay retroactive child support and medical expenses. While the trial court has considerable discretion over child support, its discretion is circumscribed by the Tennessee Child Support Guidelines. *Richardson v. Spanos*, 189 S.W.3d 720, 725 (Tenn. Ct. App. 2005). Thus, "decisions regarding child support must be made within the strictures of the Child Support Guidelines[,]" but the trial court is given discretion to deviate from the

---

[5] Specifically, the following exchange occurred:

> Q. Okay. Going through the criteria set out in recent case law, obviously [the child is] not old enough to express a preference in this. Do you think that making the change will have a potential effect on [the child's] relationship with you?
> A. No, ma'am.

guidelines in appropriate circumstances. *Id.* ("Accordingly, trial courts may, in their discretion, deviate from the amount of support required by the Child Support Guidelines, but when they do, they must make specific written findings regarding how the application of the Child Support Guidelines would be unjust or inappropriate in the case." (citation omitted)).

The Child Support Guidelines have specific requirements concerning awards of retroactive child support:

> Unless the rebuttal provisions of Tennessee Code Annotated §§ 36-2-311(a)(11) or 36-5-101(e) have been established by clear and convincing evidence provided to the tribunal, then, in cases in which initial support is being set, a judgment *must* be entered to include an amount of monthly support due up to the date that an order for current support is entered.

Tenn. Comp. R. & Regs. 1240-02-04-.06(1) (emphasis added). Retroactive child support is generally to be awarded back to the date of the birth of the child, the parents' separation, or the abandonment of the child. Tenn. Comp. R. & Regs. 1240-02-04-.06(3). The award of retroactive child support may also include an award of uncovered medical expenses. Tenn. Comp. R. & Regs. 1240-02-04-.06(4)(b) ("An additional amount may be added onto the judgment for retroactive support . . . to account for the [alternative residential parent's] share of amounts paid by the primary residential parent for childcare, the child's health insurance premium, and uninsured medical expenses over the retroactive period under consideration, and other expenses allowed under Tennessee Code Annotated § 36-2-311.").[6]

The court, however, may deviate from the presumptive support award calculated under the Guidelines:

> In cases in which the presumption of the application of the guidelines is rebutted by clear and convincing evidence, the court shall deviate from the child support guidelines to reduce, in whole or in part, any retroactive support. The court must make a written finding that application of the guidelines would be unjust or inappropriate in order to provide for the best interests of the child or the equity between the parties[.]

Tenn. Code Ann. § 36-2-311(a)(11)(B). Relevant to this case, section 36-2-311(a)(11)(A) provides that

> When making retroactive support awards pursuant to the child support guidelines established pursuant to this subsection (a), the court shall consider the following factors as a basis for deviation from the presumption in the

---

[6] Tennessee Code Annotated section 36-2-311(a)(13) provides that an award of support may include a determination between the parties as to liability for "mother's reasonable expenses for her pregnancy, confinement and recovery[.]"

child support guidelines that child and medical support for the benefit of the child shall be awarded retroactively to the date of the child's birth:

(i) The extent to which the father did not know, and could not have known, of the existence of the child, the birth of the child, his possible parentage of the child or the location of the child;

(ii) The extent to which the mother intentionally, and without good cause, failed or refused to notify the father of the existence of the child, the birth of the child, the father's possible parentage of the child or the location of the child; and

(iii) The attempts, if any, by the child's mother or caretaker to notify the father of the mother's pregnancy, or the existence of the child, the father's possible parentage or the location of the child; . . . .

Tenn. Code Ann. § 36-2-311(a)(11)(A).[7]

Where the trial court deviates as to the presumptive amount of support or the date upon which support should be ordered, however, the trial court is required to set forth written findings in the tribunal's order that include:

(a) The reasons the tribunal, pursuant to Tennessee Code Annotated §§ 36-2-311(a)(11)(A) or 36-5-101(e)(1)(C), deviated from the presumptive amount of child support that would have been paid pursuant to the Guidelines; and

(b) The amount of child support that would have been required under the Guidelines if the presumptive amount had not been rebutted; and

(c) A written finding by the tribunal that states how, in its determination,

1. Application of the Guidelines would be unjust or inappropriate in the particular case before the tribunal; and

---

[7] Another statute provides similar factors in the divorce context:

(i) Whether the remaining spouse knew or could have known of the location of the child or children who had been removed from the marital home by the abandoning spouse; or
(ii) Whether the abandoning spouse, or other caretaker of the child, intentionally, and without good cause, failed or refused to notify the remaining spouse of the location of the child following removal of the child from the marital home by the abandoning spouse; and
(iii) The attempts, if any, by the abandoning spouse, or other caretaker of the child, to notify the remaining spouse of the location of the child following removal of the child from the marital home by the abandoning spouse.

Tenn. Code Ann. § 36-5-101(e).

>    2. The best interests of the child or children who are subject to
>    the support award determination are served by deviation from
>    the presumptive guideline amount.

Tenn. Comp. R. & Regs. 1240-02-04-.06(3); *see also* Tenn. Code Ann. § 36-2-311(a)(11)(B) ("The court must make a written finding that application of the guidelines would be unjust or inappropriate in order to provide for the best interests of the child or the equity between the parties."); Tenn. Code. Ann. § 36-2-311(a)(11)(F) ("In making any deviations from awarding retroactive support, the court shall make written findings of fact and conclusions of law to support the basis for the deviation, and shall include in the order the total amount of retroactive support that would have been paid retroactively to the birth of the child, had a deviation not been made by the court[.]").

At trial, the parties stipulated that Mother incurred $4,062.56 in uncovered medical expenses related to the birth and care of the child.[8] In its initial order, the trial court ruled that Father would not be required to pay for any expenses beyond a $1,000.00 payment he made in November 2017: "The court finds that the parties reached an equitable agreement as to past medical bills and the $1,000.00 paid by the Father to the Grandmother fulfills his obligation for any and all medical bills." Mother raised this issue in her motion to alter or amend, noting that no such agreement existed and the trial court did not rule on whether Father was required to pay retroactive child support.[9] The trial court's order on the motion to alter or amend again denied Mother an award for retroactive support and uncovered medical expenses. While the written order made no additional findings, the transcript attached to the written order included the following reasoning:

>    [Mother] did not want this man to have anything to do with this child. She
>    did everything she could and she did not allow him to parent this child, and
>    so the finding of this Court through the parenting plan is and certainly this is
>    a case for appeal, and certainly I would like to see the appellate courts rule
>    on this, that when a mother and a grandmother go to the extent that they went
>    to deny access to a child that that person comes into this Court with unclean
>    hands and does not deserve the retroactive child support that she prayed for
>    . . . . The request to -- for this Court to address retroactive child support is
>    denied, and that denial is based upon the findings of the Court in its previous
>    order that was entered.

At oral argument, Father's counsel admitted that the parties had never reached an equitable agreement as to the payment of uncovered, stipulated medical expenses or

---

[8] In her brief, Mother contends that her own uncovered medical expenses related to pregnancy were $6,043.37, with additional expenses for medical care of the trial. At trial, however, the parties submitted a stipulated exhibit that marked out this figure and instead indicated that Mother's pregnancy-related bills totaled only $1,980.81, with the total medical expenses for Mother and the child totaling $4,062.56. No objection was made to this exhibit; rather, the parties indicated that they stipulated to it.

[9] Father does not argue on appeal that either of these requests were not properly raised in the trial court. We therefore assume for purposes of this appeal that these requests were properly raised and litigated.

- 10 -

retroactive support. Father argues on appeal, however, that the trial court had discretion to conclude that Father was not obligated to make these payments considering Mother's interference with Father's ability to parent the child.

We agree that the trial court had discretion to deviate from the presumptive support award. The problem, however, is that the trial court did not comply with the Tennessee Child Support Guidelines. Although the Child Support Guidelines permit trial court's to consider, *inter alia*, a mother's inference in the father's knowledge of the child under section 36-2-311(11)(A),[10] the Guidelines further provide that if the trial court orders a deviation under this section, it must provide written notice of the reasons for the deviation, the amount that would have been ordered absent the deviation, a written finding of how application of the Guidelines would be unjust, and, most importantly, how the best interest of the child is served by the deviation. Tenn. Comp. R. & Regs. 1240-02-04-.06(3).

None of the trial court's various rulings in this case indicate the amount that would have been ordered absent the deviation. The trial court also fails to specifically address how application of the Guidelines is unjust. Most fatally, the trial court does not mention or appear to in any way consider whether a deviation would be in the child's best interest; rather, the trial court's decision to deny Mother retroactive child support is focused solely on Mother's own bad conduct. When the trial court orders a deviation of child support without the required findings, we have often held that the decision should be vacated and the cause remanded for the entry of a fully compliant order. *See, e.g.*, **Vance v. Vance**, No. M2017-00622-COA-R3-CV, 2018 WL 1363323, at \*6 (Tenn. Ct. App. Mar. 16, 2018), *perm. app. denied* (Tenn. Aug. 9, 2018) ("Absent these findings, we cannot properly review the trial court's decision. We must, therefore, vacate the decision and remand the matter to the trial court for such findings, based on the record or further testimony."); **Johnson v. Dominick**, No. M2016-01643-COA-R3-CV, 2017 WL 5508484, at \*3 (Tenn. Ct. App. Nov. 16, 2017) ("In the absence of these required findings, this Court has no basis on which to review the trial court's decision regarding retroactive child support. Accordingly, we vacate the portion of the judgment regarding retroactive child support and remand for such further proceedings as may be necessary and consistent with this opinion[.]"). As such, the appropriate remedy is to remand to the trial court to reconsider Father's argument that a deviation is warranted. If the trial court does find that Father is entitled to a deviation with regard to retroactive child support and uncovered medical expenses, the trial court must make explicit findings pursuant to Rule 52.01, section 36-2-311(a), and Rule and Regulation 1240-02-04-.06(3).

### III.

---

[10] The trial court did not specifically find that Mother refused to notify Father about the child's existence or location, but that Mother interfered with Father's ability to form a relationship with the child. Father contends that the trial court was also allowed to consider the equities of the parties and that the above factors were therefore non-exclusive. Because we vacate the trial court's decision, we do not reach this issue.

Finally, Mother argues that the trial court erred in finding that Father would not be required to prove a material change in circumstances if he sought a change in parenting time in the future. In denying Mother's motion to alter or amend on this issue, the trial court explained that its ruling was based on the young age of the child. We agree with Mother that the trial court erred.

Parents may seek modification of either a parenting plan or a custody determination. Under either circumstance, however, Tennessee Code Annotated section 36-6-101 provides that the petitioner "must prove" a material change in circumstances. Tenn. Code Ann. § 36-6-101(a)(2)(B) & (C). With regard to a change in custody, the statute provides as follows:

> If the issue before the court is a modification of the court's prior decree pertaining to custody, the petitioner *must prove* by a preponderance of the evidence a material change in circumstance. A material change of circumstance does not require a showing of a substantial risk of harm to the child. A material change of circumstance may include, but is not limited to, failures to adhere to the parenting plan or an order of custody and visitation or circumstances that make the parenting plan no longer in the best interest of the child.

36-6-101(a)(2)(B)(i) (emphasis added). With regard to a change to a parenting plan, the statute provides as follows:

> If the issue before the court is a modification of the court's prior decree pertaining to a residential parenting schedule, then the petitioner *must prove* by a preponderance of the evidence a material change of circumstance affecting the child's best interest. A material change of circumstance does not require a showing of a substantial risk of harm to the child. A material change of circumstance for purposes of modification of a residential parenting schedule may include, but is not limited to, significant changes in the needs of the child over time, which may include changes relating to age; significant changes in the parent's living or working condition that significantly affect parenting; failure to adhere to the parenting plan; or other circumstances making a change in the residential parenting time in the best interest of the child.

Tenn. Code Ann. § 36-6-101(a)(2)(C) (emphasis added).

Based on the different language chosen by our legislature for each type of modification, the Tennessee Supreme Court has held that a "lower threshold" for providing a material change in circumstances is "applicable in modification [of residential schedule] proceedings[.]" ***Armbrister***, 414 S.W.3d at 703–705 ("[T]he enactment of section 36-6-101(a)(2)(C) reflects the General Assembly's 'policy decision to make it easier to establish that a material change in circumstances has occurred' when a party seeks to modify a residential parenting schedule.") (quoting ***Boyer v. Heimermann***, 238 S.W.3d 249, 259

- 12 -

(Tenn. Ct. App. 2007). Thus, while a parent seeking only to modify a parenting schedule bears a lower burden than a parent seeking to modify custody, the parent must still demonstrate a material change in circumstances affecting the child's best interest to obtain modification in this circumstance.

Here, the trial court's ruling excuses Father from complying with section 36-6-101(a)(2)(C) based on the young age of the child. Nothing in section 36-6-101(a)(2)(C), *Armbrister*, or its progeny support such a ruling. Under 36-6-101(a)(2)(C), even if Father only seeks a change in the residential parenting schedule, he "must prove by a preponderance of the evidence a material change of circumstance affecting the child's best interest." The trial court's ruling excusing Father from the statutory requirement is therefore reversed.

## CONCLUSION

The judgment of the Chester County Juvenile Court is reversed in part, vacated in part, and remanded for further proceedings consistent with this Opinion. Costs of this appeal are assessed to Appellee William Chase Knipper, for which execution may issue if necessary.

s/ J. Steven Stafford
J. STEVEN STAFFORD, JUDGE

- 13 -